Louis Caron's (dependents') Case.

Suffolk.   October 5, 1966. — December 1, 1966.

Present: Wilkins, C.J., Whittemore, Cutter, Kirk, Spiegel, & Reardon, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Street risk, Serious and wilful misconduct of employee.

The production control manager of a company, a self-insurer under the Workmen's Compensation Act, who one day was directed by his immediate superior to attend a company dinner meeting that evening at a hotel some distance from the company plant so that they could discuss certain production problems, and who drove from the plant to the hotel in his own automobile, discussed company business before, during, and after the meeting, and was killed in a collision of his automobile with a trailer truck on his way home, could warrantably be found to have had the status of an "employee" of the company at the time of the collision and to have then sustained an injury compensable under G. L. c. 152, § 26, as one "arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer," and an award of dependency compensation was justified [410]; the award was not barred under § 27 by the fact that the employee had been drinking during such evening. [410]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Taveira,* J.

*Norman P. Beane, Jr.,* for the self-insurer.

*Harry Zarrow* for the claimant.

KIRK, J.  The self-insurer[1] (the company) appeals from a final decree awarding dependency compensation to the claimant widow for her benefit and for the benefit of her three minor children.  The award was based upon findings of the single member as supplemented by the reviewing board.

We summarize the findings and mention for purposes of clarity undisputed facts not expressly found.  Louis Caron, the deceased, who lived in Oxford, was the production control manager of the company.  He worked at the main plant in Worcester.  On September 25, 1962, Caron was instructed by his immediate superior, one Phillips, to attend a company dinner meeting that evening at a hotel in Spencer.  A total of eighteen or twenty people were to attend, including supervisory employees from other plants operated by the company.  Caron's presence at the dinner meeting was desired, among other reasons, so that he could discuss with his superior problems relating to the production of the M–14 rifle.  Caron had been away from the plant for several days, having attended at the company's direction an IBM school in the State of New York.

Caron drove his own car and arrived at the designated hotel at 6:30 P.M.  A social hour was then under way.  Caron met Phillips and discussed business problems with him while having drinks.  During dinner, which began at 7:30 P.M. and ended at 9 P.M., they sat near one another and continued their conversation.  Some of the persons in attendance then left the hotel for Worcester to witness a closed-circuit televised sporting event, while others, including Caron and Phillips, remained at the hotel and discussed business and other matters over drinks.  All expenses of the meeting including the dinner and the liquor, whether consumed before, during or after the meeting, were paid by the company.  Caron's transportation expenses to and from the meeting were also paid by the company.

Phillips and Caron talked about business until 10:30 P.M.

---

[1] Harrington & Richardson, Inc.

when Phillips left. It was then raining. Caron left some-
time later. He was killed at 12:05 A.M. on September 26,
en route to his home, while driving east on the westbound
lane of Route 20. His car collided with a trailer truck
which was proceeding west in the same lane. The point of
collision was approximately ten miles from Spencer.

The reviewing board found, as did the single member,
that Caron was "in the course of his employment" when he
went to the hotel and continued so throughout the evening
until his death. The board made the additional finding that
"at the time of the motor vehicle accident . . . [Caron]
was using his motor vehicle with the general authorization
of the . . . [company]."

One contention of the self-insurer is that certain subsidi-
ary findings, exclusive of those later to be discussed, are
lacking in evidential support. We have examined the evi-
dence in light of the standard of review which is applicable
to workmen's compensation cases, *Hachadourian's Case,*
340 Mass. 81, 85, *Buck's Case,* 342 Mass. 766, and conclude
that the contention is without merit.

We turn to the main contention of the self-insurer, that
Caron's death is not compensable under G. L. c. 152, § 26,
which authorizes compensation for an employee's personal
injuries "arising out of and in the course of his employ-
ment, or arising out of an ordinary risk of the street while
actually engaged, with his employer's authorization, in the
business affairs or undertakings of his employer . . . ." It
was held in *Harvey's Case,* 295 Mass. 300, 303: "In order
for an employee to establish a right to compensation he
must show that his injury arose from one of those two
sources of injury alternatively stated in the statute." We
think that the additional finding made by the board, when
read in light of the other findings, shows that the award of
benefits to the claimant widow and her children was in-
tended to be made under the second alternative; i.e. that
Caron, "while engaged in the business affairs of his em-
ployer, received fatal injuries arising from a risk of the
street." *Hamel's Case,* 333 Mass. 628, 629.

The fundamental question, therefore, is whether it could be found that Caron had the status of an "employee" of the company at the time of the collision. *Harvey's Case,* 295 Mass. 300, 302. Under the first clause of the second sentence of G. L. c. 152, § 26, it is conclusively presumed that "any person, while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer . . . and while so performing such work, receives a personal injury," is an employee. See G. L. c. 152, § 1 (4). Evidence which is sufficient to establish the facts necessary to create the presumption is likewise sufficient to support a finding of a right to compensation for injuries arising from a risk of the street. *Harvey's Case,* 295 Mass. 300, 304.

In several cases we have held that a person does not have the status of "employee" and is not entitled to compensation for personal injuries received while going to or coming from his place of employment. *Fumiciello's Case,* 219 Mass. 488. *Chernick's Case,* 286 Mass. 168. *Smith's Case,* 326 Mass. 160. A different result has been reached, however, in cases where the duties of the claimant required him to be on or about the streets during working hours. See *Harvey's Case,* 295 Mass. 300; *Hamel's Case,* 333 Mass. 628. We have also indicated that, in certain circumstances, the employee relationship is not suspended when the employee leaves his place of employment on a mission which was necessitated by his employment, *Colarullo's Case,* 258 Mass. 521, *Wamboldt's Case,* 265 Mass. 300, *Manley's Case,* 280 Mass. 331, even if the mission is performed outside normal working hours. See *Rourke's Case,* 237 Mass. 360, 363; *Labatte* v. *Lavallee,* 258 Mass. 527. Although each case must be decided on its facts, where it appears that it was the employment which impelled the employee to make the trip, the risk of the trip is a hazard of the employment. *Mandell's Case,* 322 Mass. 328, 331. Compare *Chernick's Case,* 286 Mass. 168.

Applying the reasoning of these cases to the one before us, we think that the board's additional finding, which implicitly was that Caron, at the time of his injury and death, had the status of ''employee'' under the second alternative of G. L. c. 152, § 26, must be sustained under the standard stated in *Buck's Case,* 342 Mass. 766, 768. He was directed to attend the company meeting by his superior. He proceeded directly from his place of employment to the place of the meeting. He took an active part in the discussion of company business during the meeting, and continued to discuss company business after the meeting. His homeward bound trip could be found to have been an essential part of his mission.

Other findings or evidence do not require a different result. Section 26 does not restrict risks of the street to those which are not extraordinary or unusual. *Higgins's Case,* 284 Mass. 345. *Hamel's Case,* 333 Mass. 628, 629. Nor does the finding that Caron had been drinking prevent the award of compensation benefits. See G. L. c. 152, § 27.

The decree is affirmed. Costs of appeal are to be determined by the single justice.

*So ordered.*