ZINON PAPANASTASSIOU'S (dependents') Case.

Suffolk.    April 7, 1972. — June 5, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Street
risk, Specific compensation.

On appeal from a final decree of the Superior Court in a workmen's
compensation case, the decision of the reviewing board must be
accepted as final if supported by the evidence and not tainted by
error of law.  [91]

Evidence in a workmen's compensation case warranted a conclusion
that the employee, a research chemist, was within the terms of
G. L. c. 152, § 26, when he suffered fatal injuries from an accident
while he was driving in his own car from his home to his place of
employment in the evening outside usual working hours by reason
of an experiment in process there.  [93–94]

In a workmen's compensation case, there was ample evidence to permit
awards of compensation under G. L. c. 152, § 36 (d), (h), (i), and
(q).  [94–95]

CERTIFICATION to the Superior Court of a decision by
the Industrial Accident Board under the Workmen's
Compensation Act.

The case was heard by *Moriarty* ,J.

*Thomas A. L'Esperance, Jr.*, for the insurer.

*Charles T. Johnson* for the claimants.

TAURO, C.J.   This is an appeal by the insurer from a
final decree of the Superior Court awarding compensa-
tion to the deceased employee's dependents under the
Workmen's Compensation Act, G. L. c. 152.   The decree
was in accordance with the decision of the reviewing
board which had affirmed and adopted the findings and
decision of the single member.   "On judicial review the
decision of the board must be accepted as final, if sup-
ported by the evidence and not tainted by error of law."
*Haley's Case*, 356 Mass. 678, 680.

The employee died on June 4, 1968, from personal
injuries sustained in an automobile accident which oc-

curred on June 3, 1968, about 10:20 P.M. while driving from his home to his place of employment. The insurer contends that the employee's injuries did not arise "out of and in the course of his employment, or . . . out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer." G. L. c. 152, § 26. The insurer further contends that even if the injuries incurred were within the coverage of the act, the claimants did not sustain the burden of proof to permit recovery under G. L. c. 152, §36 (d), (h), (i), (n) and (t).[1] The single member found that the injuries and death arose out of and in the course of employment and were compensable under the act. His decision was upheld by the reviewing board and by a judge of the Superior Court.

We summarize the pertinent evidence. The decedent was employed as a senior research chemist by Arthur D. Little, Inc., as a salaried employee with usual working hours from 8:30 A.M. to 5:30 P.M. "[H]e was free, as were other company professionals, to go and come as he felt necessary. His professional status with the company included delegation to him of responsibility and it was expected of him that his professional performance would be to do whatever was necessary to be done. He was free to enter the assured's premises nights or weekends." On the day of the accident, the decedent began two experiments at the employer's premises, a bromination experiment and a hydrogenation experiment. The hydrogenation experiment required periodic readings, and the decedent had told his assistant that "[I] may come back . . . [this] evening or . . . [I] may wait until morning." An after-hours logbook indicated that the decedent occasionally worked at night and on weekends

---

[1] The payments were ordered in a lump sum in accordance with G. L. c. 152, § 36A. (Also ordered was accrued dependency compensation under § 31; burial compensation under § 33; $500 under § 65N and various costs under §§ 9A, 10 and 11A, together with interest under § 50.)

and holidays. The decedent used his own car without reimbursement when he used various university libraries for his research. Other employees in the decedent's position would not usually request reimbursement in these situations.

1. The evidence was sufficient to support a finding that the employee's injuries which led to his death arose out of and in the course of his employment. In interpreting this State's workmen's compensation law, we have said: "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Caswell's Case*, 305 Mass. 500, 502. *Bator's Case*, 338 Mass. 104, 106. The insurer in the instant case argues that there was no emergency or urgency requiring the decedent to return to the laboratory. This, however, is not the test of whether the injury was one arising out of the decedent's employment. The statute does not make such a test. It requires only that the employee be involved in the "business affairs or undertakings of his employer." G. L. c. 152, § 26.

"Although each case must be decided on its [own] facts, where it appears that it was the employment which impelled the employee to make the trip, the risk of the trip is a hazard of the employment." *Caron's Case*, 351 Mass. 406, 409. Upon the facts presented here, we believe a finding was warranted that the decedent's employment "impelled" him to make the trip which ultimately led to his death. The decedent was a research chemist and was employed to conduct experiments and, as an incident thereto, he was required to do whatever he judged necessary to assure the success of his experiments. Although a salaried employee, in carrying out his duties, he was free to come and go as he pleased, and he had his employer's authorization to conduct work outside of the standard working hours. On the day of the accident the decedent had not completed a particular experiment within the standard working hours, and in

the exercise of his professional judgment, in order to achieve a successful result, he decided to return to complete the experiment after hours in the evening rather than to wait for the start of the next working day. Since the trip to the laboratory was in fulfilment of the decedent's obligations to his employer and otherwise in accordance with the terms of his employment, it follows that he was on an "undertaking" of his employer. The instant case is thus clearly distinguishable from cases such as *Chernick's Case,* 286 Mass. 168, *Smith's Case,* 326 Mass. 160, *Collier's Case,* 331 Mass. 374, and *Gwaltney's. Case,* 355 Mass. 333, where the employees were merely going to or coming from the places of business of their employers.

2. There was ample evidence to permit recovery under G. L. c. 152, § 36 (d), (h) and (i). The allowance of recovery under (n) and (t) indicates that the functional loss was considered permanent; it should have been awarded under (q). See *Lauble's Case,* 341 Mass. 520, 522–524. A specialist in neurosurgery testified for the claimants as to the extent of the decedent's injuries. The insurer called no medical witnesses. The doctor testified that he felt the decedent "had a mid-brain injury, . . . that . . . he . . . may have [had] a fracture dislocation of . . . [the] cervical spine." He further testified that "[h]e had a compound fracture of the tibia, fibula, a fracture of the femur." It was his opinion that if the decedent "had lived, he would never have regained the effective use of his upper extremities or lower extremities. . . . [H]e would never have been able to use his arms or hands for effective work, nor would he have been able to walk . . . speech probably would have been impossible." There was further testimony that the decedent would have suffered double vision if he regained consciousness. He also "would have probably lost bladder and bowel control, as well as sexual functions." On cross-examination, the doctor testified that his opinion as to "a fractured cervical spine" was based on his "own clinical experience." He further testified that the ex-

tent of loss of bodily functions was based on his assuming an injury to the midbrain which was his "clinical diagnosis," and that the only way of "conclusively" demonstrating that fact would be by an autopsy which was not performed. The findings that the decedent "would not have had the use of his upper or lower extremities, speech would have been impossible, vision . . . would have . . . [been] double . . . with his eyes disbalanced; this also would be disfiguring" were supported by the evidence. The findings were based "on testimony of probabilities but not on conjecture or speculation." *Lauble's Case, supra,* at 522. No more was required. There was no error.

*Decree affirmed.*