JAMES SWASEY'S CASE.

Suffolk.    April 12, 1979. — October 23, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Street risk, Notice, Dependency compensation.

Evidence in a workmen's compensation case warranted a finding that an employee's injury, suffered in an automobile accident while the employee was travelling between the city to which he had been assigned by his employer and his home, arose out of and in the course of his employment where it was in the nature of the employer's business to dispatch its employees to distant areas to work on a specific project for a period of time and where the employer paid the employee a per diem amount for living or travel expenses so that the employee would not have to relocate his family but could make periodic visits home. [492-494]

Evidence in a workmen's compensation case warranted a finding that the insurer was not prejudiced by the employee's failure to give timely notice of his claim as required by G. L. c. 152, § 41. [495-496]

In a workmen's compensation case, there was sufficient evidence to warrant a finding that the employee was totally incapacitated as a result of his injury. [496-497]

---

In a workmen's compensation case, a finding that the employee was
    entitled to additional compensation benefits because of his depend-
    ent children was unwarranted on the evidence. [497]

CERTIFICATION to the Superior Court of a decision of the
Industrial Accident Board under the Workmen's Com-
pensation Act.

The case was heard by *O'Connor, J.*

*Laurence S. Locke* for the employee.

*David S. Tobin* for the insurer.

PERRETTA, J. The claimant Swasey appeals from a judg-
ment of the Superior Court dismissing his claim for work-
men's compensation benefits. The trial judge ruled that
the decision of the reviewing board, which affirmed and
adopted the findings and decision of the single member,
was not warranted by the evidence. The decision by the
single member held that Swasey's automobile accident
arose out of and in the course of his employment. "On
judicial review the decision of the board must be accepted
as final, if supported by the evidence and not tainted by
error of law." *Haley's Case*, 356 Mass. 678, 680 (1970). We
reverse the judgment of the Superior Court.

We take the facts from the evidence presented to the
single member. Lehigh Design Company, Inc. (Lehigh),
located in Waltham, was in the business of hiring people
in the engineering profession and then assigning and dis-
patching them to their clients, which were companies in
need of engineering services. Swasey, an engineering aide
technician, interviewed with Lehigh for purposes of em-
ployment by it, and Lehigh hired him in the late summer
of 1965 to work on a project for one of Lehigh's clients,
International Business Machines Corporation (IBM), in
Poughkeepsie, New York. During his interview with Le-
high, Swasey stated that the salary offered by Lehigh
would not permit him to travel between his home in Ar-
lington, Massachusetts, and Poughkeepsie, a distance of
200 miles each way. Lehigh told Swasey that he would
also receive per diem compensation at a rate of $1.25 an
hour up to a forty-hour maximum of $50 a week; he could

apply that money to food and lodging in Poughkeepsie, or to travel, or to a combination of both, whichever he might choose to do. Because of this extra money, Swasey took the position with Lehigh, and he was assigned to IBM in Poughkeepsie. According to the agreement between Lehigh and IBM, Swasey was under the immediate control and direction of IBM, but in all other respects he was under Lehigh's control. Lehigh required him to file work reports describing how many hours he worked and the services he performed. He was paid by Lehigh, which made the necessary deductions for State and Federal taxes and social security benefits. Lehigh also provided him with workmen's compensation insurance, and the cost of this was included in IBM's payment to Lehigh for Swasey's services.

While working in Poughkeepsie, Swasey lived in a room which he rented by the week for $25; he cooked his meals in his room on a hotplate, and he took one meal a day at IBM, spending about $12 a week for food; he travelled to and from Arlington in his own car every weekend, leaving Poughkeepsie on Friday night. On October 29, 1965, a Friday, he returned to his room after work, prepared his time reports, did some personal chores, napped and left for Arlington at about 10:30 P.M. While he was travelling through Westfield about 1:00 A.M. his car slammed into a tree, and he suffered a severe hip injury which kept him hospitalized until November 28, 1965, and out of work until June of 1966. At that time he was still on crutches, but he returned to work at IBM, staying until December, when Lehigh transferred him to General Dynamics in Rochester, New York. While assigned to General Dynamics he was paid by Lehigh on the same hourly and per diem basis. He would travel to Arlington only once a month due to the increased distance between his home and his work site. He left this project because his expenses began to exceed his per diem compensation, and because the pain in his hip had increased in duration and intensity, causing him mental stress

which in turn resulted in a deterioration of his work performance. After leaving General Dynamics he next found work for himself with two electronic corporations in Waltham, but he was laid off from one job because he could not perform the heavier, more physically demanding labor required of him, and he voluntarily left the second job when it became apparent to him that he was not doing his share of the work. In all his jobs, Swasey's duties as an engineering aide technician involved both intellectual and physical work; he designed and assembled electronic circuits, and as the components became larger through the assembly process the construction of the units required more physical effort and agility on his part. As his pain grew worse he worked less and less, stopping altogether in 1972, when he filed his claim for compensation benefits. For the next three years he was under psychiatric and orthopedic care, and he ultimately had a prosthetic hip attached.

The single member found that the per diem money was a term of Swasey's employment contract and that he would not have taken the job without it. He further found that Swasey's job required both physical and intellectual labor, and that his pain made it difficult for him to perform his physical responsibilities and concentrate on the intellectual aspects of his work. The single member ruled that the hip injury "arose out of and in the course of" Swasey's employment and resulted in his total incapacitation for work. The reviewing board affirmed the single member's decision.

1. Workmen's compensation benefits are available to an eligible employee[1] suffering an injury "arising out of

---

[1] Lehigh provided workmen's compensation protection for its employees, G. L. c. 152, § 1(4), *Tracy* v. *Cambridge Jr. College,* 364 Mass. 367, 372 n.3, 375 (1973), as required by G. L. c. 152, § 25A. Neither party disputes the single member's finding that Swasey was an employee of Lehigh, compare *Galloway's Case,* 354 Mass. 427 (1968), or that Massachusetts law should apply, *Air Technology Corp.* v. *General Elec. Corp.,* 347 Mass. 613, 624 n.12 (1964); *Pevoski* v. *Pevoski,* 371

and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer...." G. L. c. 152, § 26, as amended by St. 1973, c. 855, § 1. *Brigham's Case*, 348 Mass. 140 (1964). *Caron's Case*, 351 Mass. 406 (1966). The insurer argues that, because Swasey was travelling to his home for the sole purpose of visiting his family, he is precluded from receiving benefits by the "going and coming" rule, which provides that ordinarily an employee injured on the way to or from work is not entitled to compensation.[2] This is because "the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work." *Zenith Natl. Ins. Co.* v. *Workmen's Compensation Appeals Bd.*, 66 Cal. 2d 944, 947 (1967). Compare *Caron's Case, supra* at 409. The insurer relies upon *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 664 (1975), for the proposition that the rule must be here applied because Swasey did not demonstrate that his "injury occurred during a period (1) for which he was being paid, (2) when he was on call, and (3) while he was engaged in activities consistent with and helpful to the accomplishment of [the functions of his employment]." *Wormstead* does not restrict our focus to those "factors" in reviewing the nature of Swasey's employment; indeed, it specifically holds that we must "look at the plaintiff's employment in all of its aspects," *id.*, which includes "the nature, conditions, obligations or incidents of the employment." *Papanastassiou's Case*, 362 Mass. 91, 93 (1972). *Caswell's Case*, 305 Mass. 500, 502 (1940).

---

Mass. 358, 359-360 (1976); *Saharceski* v. *Marcure*, 373 Mass. 304, 309-310 (1977), and we proceed on that basis. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[2] *Bell's Case*, 238 Mass. 46 (1921). *Hatch's Case*, 257 Mass. 440 (1926). *Collier's Case*, 331 Mass. 374 (1954). *Gwaltney's Case*, 355 Mass. 333 (1969). Compare *Stacy's Case*, 225 Mass. 174 (1916); *Cook's Case*, 243 Mass. 572 (1923); *Papanastassiou's Case*, 362 Mass. 91 (1972).

The evidence warranted a finding that Swasey's injury arose out of and in the course of his employment. The "going and coming" rule has no application to this case because when Swasey's employment is viewed in its entirety, his travel was of such a nature that it brings him within "that class of 'travelling workers' not barred from receiving compensation." *Wormstead, supra* at 667. Although Swasey's employment did not require continuous mobility, it did impel travel, and "where it appears that it was the employment which impelled the employee to make the trip, the risk of the trip is a hazard of the employment." *Caron's Case,* 351 Mass. at 409. Swasey was employed by Lehigh not merely as an engineering aide, but, rather, as an engineering aide whom Lehigh, due to the very nature of its business, would assign and dispatch to distant areas, like Poughkeepsie and Rochester, to work on a specific project until completion or reassignment. It was to the benefit of Lehigh's business interests that its employees travel, and it knew that its employees did not relocate their families with each assignment but would, instead, make periodic visits home. This is obvious from Lehigh's payment of a per diem amount for purposes of living or travel expenses, whichever the employee might choose. Swasey elected to do both, and the per diem compensation was sufficient to cover the costs of his choice. Although Swasey was not injured during the hours he worked at Poughkeepsie, he was injured while engaged in an activity which constituted a critical and substantial incident of his employment for which he received compensation. Therefore, Swasey's accident could properly be found to be within the "risk of the street while actually engaged . . . in the . . . undertakings of his employer," that is, travelling from his IBM worksite (see *Papanastassiou's Case,* 362 Mass. at 93, 94), and we will not overturn the finding of the single member. *Josi's Case,* 324 Mass. 415, 416 (1949). *Brigham's Case,* 348 Mass. at 141. *Galloway's Case,* 354 Mass. 427, 428 (1968).

2. The insurer argues that Swasey is barred from re-
ceiving benefits because it did not receive notice of the
injury "as soon as practicable after the happening there-
of," nor did Swasey file his claim for benefits within one
year after the occurrence of the injury, all as required by
G. L. c. 152, § 41, as appearing in St. 1965, c. 487, § 1.[3]
However, it is well established that this notice provision
is not a bar to a claim if the employer knew of the injury
or if the lack of notice did not prejudice the insurer. G. L.
c. 152, § 44.[4] *Perrotta's Case*, 318 Mass. 737, 739 (1945).
*Leminen's Case*, 353 Mass. 772, 772-773 (1968). The fail-
ure to file a claim within the period specified in § 41 is
also excusable upon a showing of lack of prejudice to the
insurer. G. L. c. 152, § 49.[5] The single member found that
"late notice and claim are excused by the provisions of
§§ 44 and 49, as to knowledge and want of prejudice."
While the insurer raises a substantial question as to
whether Lehigh was sufficiently apprised of the facts sur-
rounding Swasey's injury so that it would have knowl-
edge of the possibility of a compensable claim (see *Hatch's
Case*, 290 Mass. 259, 262 [1935]; *Curtin's Case*, 354 Mass.
45, 47 [1968]), we need not reach that question because
the single member's finding of lack of prejudice to the
insurer,[6] under both § 44 and § 49, is supported by the

---

[3] Prior to St. 1965, c. 487, § 1, the claim for compensation had to be
filed within six months of the injury. The amendment to the statute
was approved on May 22, 1965; St. 1965, c. 487, § 2, made § 1 applicable
to injuries sustained after its effective date, as were Swasey's.

[4] That statute provides, in pertinent part: "Want of notice shall not
bar proceedings, if it be shown that the insurer, insured or agent had
knowledge of the injury, or if it is found that the insurer was not
prejudiced by such want of notice."

[5] That statute, as amended by St. 1953, c. 314, § 6, provides, in
pertinent part: "Failure to make a claim within the time fixed by
section forty-one shall not bar proceedings under this chapter . . . if it
is found that the insurer was not prejudiced by the delay."

[6] On this issue the single member found that "the employee had
adequate medical care, and the insurer had an adequate opportunity
to investigate the case after the claim had been filed."

evidence and will not be disturbed. *Wnukowski's Case,* 296 Mass. 63, 64 (1936). *Clifford's Case,* 337 Mass. 129, 132 (1958). *Ogonowsky's Case,* 338 Mass. 468, 470 (1959). Although Swasey had the burden of proving lack of prejudice to the insurer, he was not required to disprove all the possibilities in order to meet this burden (*Kangas's Case,* 282 Mass. 155, 158 [1933]); it was sufficient for him to introduce evidence "from which a reasonable inference can be drawn that the insurer suffered no prejudice." *Zabec's Case,* 302 Mass. 465, 469. *Berthiaume's Case,* 328 Mass. 186, 191 (1951). The insurer here argues, but without support in the evidence, that Swasey's late filing resulted in its inability to investigate and enforce any possible third-party liability pursuant to G. L. c. 152, § 15, as amended by St. 1965, c. 487, § 1A,[7] its inability to locate possible witnesses, and its inability to secure orthopedic and psychiatric examinations of Swasey. In addition to presenting medical records which documented that he received prompt, competent, and thorough treatment for his injuries, Swasey presented evidence from which it could be found that a timely notice and filing under § 41 and a prompt investigation thereafter would not have unearthed anything more favorable to the insurer. See *Gaffner's Case,* 279 Mass. 566, 568 (1932); *Kangas's Case,* 282 Mass. at 159; *Wheaton's Case,* 310 Mass. 504, 507 (1941); *Pena's Case,* 5 Mass. App. Ct. 451, 455-456 (1977).

3. The insurer next argues that the single member's findings that Swasey was totally incapacitated and that this was a result of his injury are unsupported by the evidence. These findings were adopted by the reviewing

---

[7] At the time of Swasey's injury, which was prior to the amendment of § 15 by St. 1971, c. 941, § 1, § 15 provided for a time limitation during which an insurer could commence a third-party action. However, the fact that Swasey filed his claim for benefits after that time, thereby precluding the insurer from commencing a third-party action does not, as a matter of law, establish prejudice. All the provisions of § 41 "are subject to the exculpatory provisions of § 49." *Leist's Case,* 350 Mass. 465, 469 (1966).

board, and it is not our function to overturn them, even if the board could have made different findings, unless they were based upon an error of law (*Josi's Case*, 324 Mass. at 416) or unsupported by any rational view of the evidence. *Wnukowski's Case*, 296 Mass. at 64. *Clifford's Case*, 337 Mass. at 132. The findings suffer from neither of those defects.

4. The insurer properly contends that the single member's findings of Swasey's right to additional compensation benefits because of his dependent children were unwarranted on the evidence presented to him. Swasey was awarded $30 a week additional benefits, or $6 a week for his wife and each of his four children as provided by G. L. c. 152, § 35A, as amended through St. 1959, c. 566, § 4. This provision extends a conclusive presumption of dependency to certain children described within § 35A(c), which description includes children under eighteen years of age. The only evidence presented to the single member concerning Swasey's children was his testimony that they were born in 1949, 1952, 1953, and 1960. Children over eighteen years of age and not otherwise within the scope of § 35A(c) cannot be included in a determination of added compensation for dependents because they are not dependent upon the disabled employee for support. See *Canavan's Case*, 331 Mass. 444, 448 (1954). The single member awarded § 35A benefits to Swasey for all his children for the periods October 31, 1965, to June 1, 1966, and August 1, 1972, to date and continuing. There are no findings which indicate how those determinations were made. In light of the dependents' birth dates and § 35A(c), we must conclude that these findings are unsupported by the evidence.

Accordingly, the judgment of the Superior Court dismissing the claim for compensation is reversed, and a judgment is to be entered remanding the case to the Industrial Accident Board for further findings on the issue of additional benefits under § 35A(c) in conformity with this opinion and on the basis of the evidence presently in the record. Swasey is to have the costs of this appeal.

*So ordered.*