**Pamela G. EMORY, Individually and in Her Capacity as Administratrix of the Estate of Charles E. Emory, and as Parent and Guardian of Kristin M. Emory, a Minor, Plaintiffs,**

v.

**Charles MILLER and Hanson Systems, Inc., Defendants.**

**Civ. A. No. 91–0045L.**

United States District Court, D. Rhode Island.

April 20, 1992.

---

Jeffrey B. Pine, John S. Foley, Decof & Grimm, Providence, R.I., for plaintiffs.

David E. Maglio, Morrison, Mahoney & Miller, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

### I.  INTRODUCTION

This matter is before the Court on the motion of defendant Charles Miller for summary judgment.  This lawsuit grows out of an automobile accident in Drummondville, Quebec Province, Canada, in which Charles Emory died.  Emory was Miller's subordinate at Hanson Systems, Inc. (a Massachusetts corporation), and a passenger in a car owned by Hanson Systems and driven by Miller when the accident occurred.  Emory's family and estate brought this suit against Miller,[1] alleging negligence.  The Emorys are Massachusetts residents, and Miller is a Rhode Island resident.

All parties agree that Massachusetts law controls this dispute.  The determinative issue is whether the plaintiffs' losses are compensable under the Massachusetts workers' compensation system.  If workers' compensation is available, then the "fellow employee" rule precludes a tort remedy, and summary judgment in this forum is appropriate.  *Saharceski v. Marcure*, 373 Mass. 304, 306, 366 N.E.2d 1245 (1977); *Comeau v. Hebert*, 352 Mass. 634, 635, 227 N.E.2d 475 (1967); *Frassa v. Caulfield*, 22 Mass.App.Ct. 105, 107, 491 N.E.2d 657, *rev. denied*, 398 Mass. 1101, 495 N.E.2d 310 (1986).  Conversely, if workers' compensation is unavailable, then this negligence suit can be maintained and summary judgment must be denied.

For the reasons that follow, this Court cannot presently conclude that the plaintiffs' losses are compensable under Massa-

---

**1.** Plaintiffs originally also named Hanson Systems as a defendant in the case.  So that diversity jurisdiction would not be destroyed, they later voluntarily dismissed their complaint against this company.

chusetts' workers' compensation system. Therefore, the motion for summary judgment must be denied.

## II. DISCUSSION

### A. FACTUAL BACKGROUND

The parties agree on the following description of events. At the time of his death, Emory was a sales engineer for Hanson Systems. Miller was the owner and sole stockholder of that company. During the months leading up to the accident Emory was assigned to work on a machine assembly project at the Drummondville plant of the Siemens Corporation, a Hanson Systems client.

This business required Emory to live away from home for extended periods. When working at the Siemens site he lodged at the Universal Motel in Drummondville. Hanson Systems reimbursed Emory for his hotel and mileage expenses, and the company also provided him with a per diem living allowance for meals and incidental expenses. Emory's normal weekday routine included work between 7:30 a.m. and 5:30 p.m., followed by dinner and occasionally a few hours at a local sporting event, bar, or nightclub. He often spent these evenings out with Michael Lavoie, a fellow Hanson Systems employee, and Francois Viger, a Siemens employee.

On July 11, 1990, Miller and Daniel Szczurko, Hanson Systems' vice president for sales and marketing, came to Drummondville for business meetings with Siemens officials. On the evening of their arrival Miller drove Emory, Szczurko, and Lavoie to a local restaurant for dinner and a discussion of the next day's business. After dinner the foursome spent several hours in a nearby nightclub, L'Avenir, before returning to the Universal Motel.

After work the next day, July 12, the same group of four joined several Siemens employees for dinner at a local restaurant, at the request of Jacques Nadeau, Siemens's president. They discussed business and social topics. During dinner Nadeau invited the Hanson Systems group to his home for drinks, and they accepted the invitation.

After about one hour at Nadeau's home—around eleven o'clock—the four Hanson Systems employees departed in the company car, with Miller at the wheel, to return to the Universal Motel. As the car approached the hotel, however, Miller announced that he was taking the others to the nightclub that they had visited the previous night. He asked for directions, which Emory supplied, and the car continued past the hotel in the direction of L'Avenir. Emory did not openly object to the new plan. En route on Rue St. Joseph, Miller lost control of the car, and Emory died in the resulting single-car accident.

Emory, Miller, Szczurko, and Lavoie all had workers' compensation insurance coverage, pursuant to Mass.Gen.L. ch. 152. Neither Emory nor any of the others had opted, under Mass.Gen.L. ch. 152, § 24, to retain common law rights to tort remedies.

### B. ANALYSIS

#### 1. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This Court cannot grant a motion for summary judgment if genuine issues of material fact exist. Any fact that could affect the outcome of the suit is material. *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of Am.*, 728 F.Supp. 862, 866 (D.R.I.), *aff'd*, 916 F.2d 731 (1st Cir.1990). The Court must view the record in the light most favorable to the party opposing the motion, here the plaintiff, indulging all inferences favorable to that party. *King v. Sullivan*, 776 F.Supp. 645, 649 (D.R.I. 1991).

■ The burden of showing that this motion should be granted rests on the defendant. An injured party who seeks workers' compensation normally has the burden of proving that the injury occurred in the course of employment. *Belyea's Case*, 355 Mass. 721, 723, 247 N.E.2d 372 (1969); *Judkins's Case*, 315 Mass. 226, 230, 52 N.E.2d 579 (1943). But here the injured party does not want workers' compensation. It is the employer's representative who has raised the fellow employee rule as an affirmative defense to the common law negligence claim, and he is also the movant for summary judgment. Consequently, a defendant moving for summary judgment on the basis of the fellow employee defense has the burden of proving the defense. *See Williams v. Shell Oil Co.*, 677 F.2d 506, 509 (5th Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982).

### 2. *Legal Framework*

The line between an employee's personal and occupational activities determines whether or not workers' compensation is available. Although many activities have mixed purposes, workers' compensation law cannot function without defining where work ends and personal time begins. This necessary distinction is often difficult to make, but it must exist in every case. The Court's task is to draw the line that is most consistent with the standards set forth in the relevant statutory and case law.

The Massachusetts Workers' Compensation Statute, Mass.Gen.L. ch. 152, provides the starting point for the analysis. This law, enacted in 1930, states:

> If an employee who has not given notice of his claim of common law rights of action under section twenty-four, or who has given such notice and has waived the same, receives a personal injury *arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with the employer's authorization, in the business affairs or undertakings of his employer*, and whether within or without the commonwealth, he shall be paid compensation by the insurer or self-insurer....

Mass.Gen.L. ch. 152, § 26 (West 1988) (emphasis added). This statute continues:

> For the purposes of this section any person, while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work *in connection with the business affairs or undertakings of his employer*, and whether within or without the commonwealth, and any person who, while engaged in the usual course of his trade, business, profession or occupation, *is ordered by an employer*, or by a person exercising superintendence on behalf of such employer, *to perform work which is not in the usual course of such work, trade, business, profession or occupation*, and while so performing such work, receives a personal injury, shall be conclusively presumed to be an employee....

*Id.* (emphasis added). Since 1941, however, the statute has not allowed recovery for:

> any injury resulting from an employee's *purely voluntary participation in any recreational activity*, including but not limited to athletic events, parties, and picnics, *even though the employer pays some or all of the cost thereof.*

*Id.* § 1(7A) (emphasis added).

■ Case law gives greater content to these statutory phrases. The Massachusetts courts have interpreted "in the course of his employment" very broadly. *See Kemp's Case*, 386 Mass. 730, 736, 437 N.E.2d 526 (1982) ("the trend of the cases over the years has been to broaden the reach of the phrase 'arising out of and in the course of ... employment'"). The cases uniformly agree that "[a]n injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Caswell's Case*, 305 Mass. 500, 502, 26 N.E.2d 328 (1940), *quoted in Papanastassiou's Case*, 362 Mass. 91, 93, 284 N.E.2d 598 (1972), *Souza's Case*, 316 Mass. 332, 334, 55 N.E.2d 611 (1944), *Frassa*, 22 Mass.App.Ct. at 110, 491

N.E.2d 657, *Swasey's Case,* 8 Mass.App.Ct. 489, 493, 395 N.E.2d 884 (1979).

■ Travel, like all other activities, can be either personal or occupational. When an employee travels "with the employer's authorization, in the business affairs or undertakings of his employer," he is acting "in the course of his employment." Mass. Gen.L. ch. 152, § 26 (West 1988). When an employee is injured in transit, the Massachusetts courts ask whether employment "impelled the employee to make the trip." *Papanastassiou's Case,* 362 Mass. at 93, 284 N.E.2d 598; *Frassa,* 22 Mass.App.Ct. at 110, 491 N.E.2d 657; *Swasey's Case,* 8 Mass.App.Ct. at 494, 395 N.E.2d 884; *see also Mandell's Case,* 322 Mass. 328, 330–31, 77 N.E.2d 308 (1948). If so, the risk of the trip is a hazard of the employment, and the worker is covered. *Papanastassiou's Case,* 362 Mass. at 93, 284 N.E.2d 598; *Frassa,* 22 Mass.App.Ct. at 110, 491 N.E.2d 657.

■ Travel to and from work is not normally included in "the course of employment," because "the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work." *Swasey's Case,* 8 Mass.App.Ct. at 493, 395 N.E.2d 884. This "going and coming" rule has no application, however, to "traveling workers," who receive coverage because employment impelled them to make the trip. *Id.* at 494, 395 N.E.2d 884. Thus, a traveling salesman who is killed while completing a job errand in his distant sales territory can collect workers' compensation. *Harvey's Case,* 295 Mass. 300, 304, 3 N.E.2d 756 (1936).

■ Traveling workers are also in the course of employment when traveling *home* from *special occupational engagements.* An engineer based in the Boston area who had to spend long periods at a project in Albany could collect workers' compensation for injuries sustained while driving home to spend a weekend with his family. *Swasey's Case,* 8 Mass.App.Ct. 489, 395 N.E.2d 884. A manager who attended a company dinner meeting in order to discuss production problems with his

supervisor could collect workers' compensation for injuries sustained while driving home. *Caron's Case,* 351 Mass. 406, 410, 221 N.E.2d 871 (1966). And an accountant on assignment in New Hampshire was covered for injuries sustained on the way home to Massachusetts, even though the accident happened late at night, long after the assignment had been completed, and after dinner at a restaurant, drinks at another establishment, and several games of air hockey at yet another lounge. *Frassa,* 22 Mass.App.Ct. at 106, 491 N.E.2d 657.

In Emory's case, two distinct conceptions of travel may be relevant. First, Emory was a "traveling worker" during his entire stay in Canada. In this sense, every activity in Canada is arguably connected to his travel and thus to his employment. Second, Emory died on the road while in transit between two engagements. In this more limited sense, the connection between his travel and his employment depends on the purposes of the two engagements.

The Massachusetts courts have rejected the expansive reading of "in the course of . . . employment" that is embodied in the first conception of travel. In a case involving the death of a traveling salesman, the Supreme Judicial Court stated clearly, "[t]he mere fact that the injury was sustained in his sales territory is not sufficient to establish that the injury arose out of and in the course of his employment." *Judkins's Case,* 315 Mass. at 231, 52 N.E.2d 579. The Court thus denied workers' compensation for a salesman who had died in a car accident. Although he had been in his sales territory, the accident occurred long after his normal working hours and in the presence of a female coworker who was apparently his mistress. *Id.* at 227–29, 52 N.E.2d 579. In 1954 the Supreme Judicial Court held that a salesman could not collect workers' compensation for injuries he sustained while on a sales call, when a gunman attacked the prospective buyer, the salesman gave chase, and the assailant turned and shot the salesman. *Burgess's Case,* 331 Mass. 90, 93, 117 N.E.2d 148 (1954). The Court found no causal connec-

tion between the salesman's employment and the heroics leading to his injury. *Id.*

■ The defendant here points to another Massachusetts decision, *Souza's Case,* 316 Mass. 332, 55 N.E.2d 611, to support the contrary view that a traveling employee acts "in the course of his employment" during the entire trip. This interpretation, however, is inconsistent with the *Souza* opinion itself and the Massachusetts workers' compensation statute. The *Souza* decision awarded coverage to a traveling employee who died in a hotel fire. He was covered, according to the Supreme Judicial Court, because the hotel stay "is provided by the employer as an incident of the work," and he had selected "a place that fulfills the requirements of the employment and that is otherwise proper in the sense that it involves no unnecessary risk." *Id.* at 336, 55 N.E.2d 611. This decision, like *Judkins's Case* and *Burgess's Case,* acknowledges, at least implicitly, that some unauthorized or improper activities by traveling workers are not necessarily "in the course of employment." The Massachusetts workers' compensation statute, moreover, clearly precludes coverage for "purely voluntary participation in any recreational activity." Mass.Gen.L. ch. 152, § 1(7A) (West 1988). This rule does not exempt traveling workers.

The focus of the inquiry, therefore, must be narrower than simply determining the general reason for Emory's trip to Canada. Because traveling workers can engage in activities away from home that are not "in the course of ... employment," the Court must consider the purpose of Emory's trip at the time of the accident. *Judkins's Case,* 315 Mass. at 230, 52 N.E.2d 579; *see also Belyea's Case,* 355 Mass. at 723, 247 N.E.2d 372; *Messersmith's Case,* 340 Mass. 117, 163 N.E.2d 22 (1959). More specifically, the Court must examine the events of the fatal evening for evidence that Emory died while acting "with the employer's authorization" on a mission that was "impelled" by employment. Mass. Gen.L. ch. 152, § 26 (West 1988); *Frassa,* 22 Mass.App.Ct. at 110, 491 N.E.2d 657;

*Swasey's Case,* 8 Mass.App.Ct. at 494, 395 N.E.2d 884.

■ The analysis becomes even more complicated when the employee is injured on his way to a recreational activity that may be related to work. In determining whether the employment and the recreation are related with sufficient closeness to justify workers' compensation coverage, the Massachusetts courts consider five factors: (1) the customary nature of the activity, (2) the employer's encouragement or subsidization of the activity, (3) the extent to which the employer managed or directed the recreational enterprise, (4) the presence of substantial pressure or actual compulsion on the employee to participate, and (5) the fact that the employer expects or receives a benefit from the employees' participation in the activity. *Kemp's Case,* 386 Mass. at 733, 437 N.E.2d 526; *Moore's Case,* 330 Mass. 1, 4, 110 N.E.2d 764 (1953). None of these factors is determinative, except the existence of employer compulsion, "which often might warrant or even require" a finding that the employee was injured in the course of employment. *Moore's Case,* 330 Mass. at 5, 110 N.E.2d 764.

### 3. *The Law Applied to the Facts*

The following interpretation of the events of July 12, 1990, is undisputed. First, Emory had traveled to Canada in order to perform work for his employer. Second, the July 12 dinner engagement and subsequent gathering at the home of Nadeau, a Hanson Systems client, had a business purpose in addition to its social purpose. Third, Miller unilaterally decided to take his employees to L'Avenir afterward. Fourth, as a superior officer and the driver of the vehicle, Miller held the power to compel his subordinates to accompany him to L'Avenir. Fifth, there is no evidence that Emory objected to the trip to L'Avenir. Sixth, Emory's provision of directions to L'Avenir allows—but does not require—an inference that his participation was voluntary. Finally, the planned trip to L'Avenir had no business purpose and would not benefit Hanson Systems. Thus, Emory

died while traveling between an engagement that had a business purpose and an engagement that had no business purpose. The only disputed factual question is whether Miller compelled Emory against his will to go along on the trip to L'Avenir, or whether Emory was a willing participant in the adventure.

■ Summary judgment will be denied unless the defendant can show that, based on the undisputed facts, Emory died "in the course of his employment," and not during "purely voluntary participation in [a] recreational activity," as these phrases are interpreted in the case law. This requires the defendant to show, based on the undisputed facts, that Emory was traveling to L'Avenir with his employer's authorization in a venture that was "impelled" by the employment relationship. In determining whether Emory's employment "impelled" participation in the recreational activity, the Court may consider Miller's encouragement or subsidization of the activity, the extent to which Miller managed or directed the outing, the presence of substantial pressure or actual compulsion on Emory to participate, the customary nature of the activity, and whether Miller expected Hanson Systems to receive a benefit from the employees' participation in the activity.

Some undisputed facts support the conclusion that the planned recreation was impelled by employment. Emory was certainly traveling to L'Avenir with his employer's authorization. Miller suggested, encouraged, directed, and may have planned to subsidize the activity.

But other factors suggest that Emory's participation was not impelled by employment. The trip to L'Avenir clearly was not a "customary" activity such as a company picnic or a Christmas party. And unlike the visit to Nadeau's home, Emory's participation in the trip to L'Avenir would not have conveyed a benefit to the employer. Whether Miller compelled Emory to go along, moreover, is unclear.

Because a genuine dispute exists over whether Miller compelled Emory to go to L'Avenir, and because none of the other factors is determinative, this Court cannot grant summary judgment. Summary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial. *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, § 2725, at 104–05 (1983). If the evidence presented "is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." *Gannon*, 777 F.Supp. at 169. In this case, the evidence of compulsion is subject to conflicting interpretations and is for the jury to weigh.

### III. CONCLUSION AND ORDER

Accordingly, Charles Miller's motion for summary judgment is denied.

It is so ordered.