FRANK M. SOUZA'S (dependents') CASE.

Suffolk.   December 7, 1943. — June 2, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, &
SPALDING, JJ.

*Workmen's Compensation Act,* Injuries to which act applies.  *Proximate
Cause.*

Death of an employee in a fire while asleep during the night in a lodging
house away from his home arose out of and in the course of his em-
ployment within the meaning of the workmen's compensation act
where it appeared that his absence from home over night was required
by his work; that he was subject to call by his employer for work at
any time; and that, although he selected the lodging house, it was
selected in accordance with the requirements of his work and the
terms of his employment and he was reimbursed for the expense of
his lodging by his employer.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board awarding compensation in a pro-
ceeding under the workmen's compensation act.

A decree dismissing the claim was entered by order of
*Brogna,* J., and the claimants appealed.

The case was argued at the bar of this court in December,
1943, before *Field,* C.J., *Donahue, Lummus, Qua, & Cox,* JJ.,
and after the retirement of *Donahue & Cox,* JJ., was sub-
mitted on briefs to *Dolan, Ronan, Wilkins, & Spalding,* JJ.

*S. B. Horovitz,* (*B. A. Petkun* with him,) for the claimants.
*W. I. Badger, Jr.,* for the insurer.

QUA, J.   The deceased employee lost his life in a fire in
the early morning of January 30, 1942, while asleep in a
rooming house in New Bedford, where he was spending
the night.   The question is whether his injury and death
arose out of and in the course of his employment.   G. L.
(Ter. Ed.) c. 152, § 26, as amended.

Findings of the board and facts not in dispute are these:
The deceased was employed by The Cooper-Bessemer Cor-
poration, whose business was the manufacture and sale of

Diesel marine engines. This corporation had an office in Gloucester, which was the headquarters of the deceased. The home of the deceased was in that vicinity. His work was that of a "service man" in connection with the installation and repair of his employer's engines. His work was not confined to Gloucester but called him to various places up and down the coast and required him from time to time to be away from home nights. When he was away from Gloucester his employer was in touch with him. It knew where he could be reached when he was in New Bedford. He worked "on a basis" of forty-four hours a week, but neither he nor the company adhered to this schedule. He was required to work "whenever he was called upon" and was "expected to expend as much time as the work in hand required." "In any emergency, whether during or after regular hours, he was expected to put in as much of his time and attention as in his judgment the situation required." He "had no stated or definite hours of work each day, and, in the event of necessity or emergency, was, even after the regular hours, subject to the company's call at any time." His employment was "of a continuous nature." He was paid a salary, and in addition, when away from home, he was paid his expenses for room, board, and transportation. Although he was free to select his own lodging place, it was his custom, when in New Bedford, to lodge at the place where he met his death. His employer knew this. There was much evidence that this place was convenient to the vessels upon which he would have occasion to work, and that he could come there in his working clothes. It was "a proper place" for him to lodge. The deceased had gone to New Bedford on January 29. According to the evidence there was work to be done on several vessels. The deceased was required to spend the night and to resume work the next day. He was where his employer could communicate with him during the night if occasion arose. He was subject to such a call at any time, and his employer would have reasonably expected to find him in his room in the lodging house if the occasion had arisen. The evidence shows clearly the necessity of keeping the vessels using the

employer's engines in operating condition without regard to hours of work, and that calls upon the employee for work at odd hours were not uncommon.

Staying at the lodging house in New Bedford involved a degree of risk from fire. The question is not whether that risk was greater than the similar risk at some other place where the employee might have stayed, or at his own home, if his employment had not called him away from home. The question is whether his employment brought him in contact with the risk that in fact caused his death. The correctness of this statement is illustrated by cases where compensation has been allowed for injuries sustained on the employer's own premises or the approaches to those premises by reason of slipping upon stairs or floors or coming in contact with objects of a familiar kind which might equally well be encountered in other places. In such cases the inquiry has not been whether the danger was greater where the employee was injured than at his own home or at some other place where he might have been if he had not been where he was. The inquiry has been whether his employment exposed him to the risk, whatever it was, which actually caused the injury. See, for example, *Sundine's Case*, 218 Mass. 1; *Cox's Case*, 225 Mass. 220; *O'Brien's Case*, 228 Mass. 380; *Hallett's Case*, 230 Mass. 326; *S. C.* 232 Mass. 49; *Sullivan's Case*, 241 Mass. 9; *Crown's Case*, 254 Mass. 496; *Doyle's Case*, 256 Mass. 290; *Cusick's Case*, 260 Mass. 421; *Sullivan's Case*, 265 Mass. 463; and *Holmes's Case*, 267 Mass. 307. And in *Caswell's Case*, 305 Mass. 500, this principle was held to apply even when the wall of the building in which the employee was at work was caused to fall upon him by the violence of a hurricane. In that case we said: "It [the injury] need not arise out of the nature of the employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." 305 Mass. at page 502. In that case many illustrations are given of cases where the employee had been injured by contact with some tangible object pertaining to

his place of work and was allowed compensation, even though the contact had not been brought about by the nature of the employment itself but had been caused by the operation of such forces as disease of the employee, the fall of a wall on adjoining land crushing the roof of the building in which the employee worked, lightning, a cyclone, or an earthquake. It seems to us that injury and death in a fire in a building, whether from flames, smoke, gases, the falling of objects, or the falling of the employee himself are to be treated as if arising from contact with some part of the premises, and that it is not necessary to show the precise nature of the contact or the cause of the fire.

Another established principle is that the employee, in order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the moment of injury. It is enough if he is upon his employer's premises occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment. This principle has been applied in instances where the employee was resting (*Sullivan's Case*, 241 Mass. 9; *Holmes's Case*, 267 Mass. 307), attending to a call of nature (*Haskins's Case*, 261 Mass. 436), getting fresh air (*Von Ette's Case*, 223 Mass. 56, 61), eating meals (*DeStefano* v. *Alpha Lunch Co. of Boston*, 308 Mass. 38, 40), going or coming by stair or elevator (*O'Brien's Case*, 228 Mass. 380; *White* v. *E. T. Slattery Co.* 236 Mass. 28, 33–34), travelling in a vehicle furnished by the employer (*Gilbert's Case*, 253 Mass. 538), or washing his own clothes used in his work (*Sylvia's Case*, 298 Mass. 27). And where the employee is upon the premises and is subject to call the employment is regarded as continuous and even includes a "day off," if the employee is still subject to call. *Doyle's Case*, 256 Mass. 290. *Sullivan's Case*, 265 Mass. 463. Compare *Rourke's Case*, 237 Mass. 360, 364.

It follows from the principles stated and the cases cited that if the employer in the present case had himself maintained the lodging house or had himself hired a room in it and had insisted as a term of the employment that the em-

ployee occupy the place provided by him while in New Bedford and subject to call, the employment would have brought the employee directly into contact with the risk of fire in the place provided, and injury by fire there would arise out of and in the course of the employment. There are decisions to this effect. *Giliotti* v. *Hoffman Catering Co. Inc.* 246 N. Y. 279. *Scott* v. *Hoage,* 73 Fed. (2d) 114. *Chitty* v. *Nelson,* 2 B. W. C. C. 496. See *Holt Lumber Co.* v. *Industrial Commission of Wisconsin,* 168 Wis. 381; *London & North Eastern Railway* v. *Brentnall,* [1933] A. C. 489.

It would be possible to draw the line at this point and to say that where the employee himself selects the place of lodging, and so in a sense chooses the particular risk, the employment has spent its force and no longer brings him into contact with the danger. A few courts have taken this view. *Davidson* v. *Pansy Waist Co.* 240 N. Y. 584. *Turner* v. *Cathedral Publishing Co. Inc.* 268 N. Y. 656. *Kass* v. *Hirschberg,* 191 App. Div. (N. Y.) 300. *Gibbs Steel Co.* v. *Industrial Commission,* 243 Wis. 375. But it seems to us that the connection between the employment and the risk is substantially the same whether the employer or the employee selects the particular place, as long as lodging away from the employee's home or regular place of abode is provided by the employer as an incident of the work, and is required by the terms of the employment, and as long as the employee selects a place that fulfills the requirements of the employment and that is otherwise proper in the sense that it involves no unnecessary risk. A number of courts have adopted this view in relation to travelling employees, not only in case of injury by fire, but in case of injury from other comparable calamity at the place of lodging. *Harivel* v. *Hall-Thompson Co.* 98 Conn. 753. *Railway Express Agency Inc.* v. *Shuttleworth,* 61 Ga. App. 644. *Standard Oil Co. of Kentucky* v. *Witt,* 283 Ky. 327. *Stansberry* v. *Monitor Stove Co.* 150 Minn. 1. *Texas Employers' Ins. Association* v. *Harbuck,* 73 S. W. (2d) 113 (Tex. Civ. App.). *California Casualty Indemnity Exchange* v. *Industrial Accident Commission,* 5 Cal. (2d) 185. *Lasear, Inc.* v. *Anderson,* 99 Ind. App. 428. *Foley* v. *Home Rubber Co.* 89 N. J. L. 474. *Em*

*ployers' Liability Assurance Corp.* v. *Warren,* 172 Tenn. 403. *Texas Employers' Ins. Association* v. *Cobb,* 118 S. W. (2d) 375 (Tex. Civ. App.).

In our opinion it follows that, upon the findings of the board, the deceased employee, while as an incident of his employment he was asleep subject to call in a place paid for by his employer and selected according to the conditions imposed by the nature of the employment, met injury and death arising out of and in the course of his employment.

The decree of the Superior Court is reversed, and a decree must be entered in favor of the claimants for compensation under the act.

*Ordered accordingly.*