**EDITH P. HAMMER**

v.

**THE WORKMEN'S COMPENSATION COMMISSION and THE WEST INDIAN COMPANY, LTD., et al.**

Civil No. 40-1945

District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

October 29, 1945

*Same case on appeal, see p. 478, this volume*

57

**MOORE,** *Judge*

This matter came on for hearing upon appeal of the claimant herein from the decision of the Workmen's Compensation Commission of Saint Thomas and Saint John denying compensation for the following reasons:

1. No satisfactory evidence that the decedent was called by telephone from the West Indian Company dock.

2. Insufficient evidence to show that the decedent had left his home to go to the dock.

3. Insufficient evidence to show that the decedent had started on his way to work at the dock.

4. That the barge which the decedent was to tend did not in fact go to the dock at any time that day or that evening of the accident; that it went to the dock the next day.

5. That the decedent did not meet his death in the course of his employment.

The record of testimony taken by the Workmen's Compensation Commission was submitted in evidence together with briefs and oral arguments by both sides. At the hearing before this court, some additional testimony was introduced concerning the contract of employment that the deceased was working under at the time of his death. This additional testimony, however, was stricken upon motion of counsel for the Compensation Commission, and is not considered in this opinion.

The facts of the case briefly, as shown from the record of testimony before the Compensation Commission, are that the deceased was working for the West Indian Company under a contract of employment which provided as follows:

a. That he was employed as a crane foreman and agreed to participate in any kind of work within his capacity.

b. That the normal working week consisted of forty-eight hours.

c. That working hours may fall at any time, Sundays and holidays not excepted.

d. That he should receive 50% overtime for all hours after forty-eight hours a week, Sundays and holidays not excepted.

e. That deceased agreed to work at any time, day or night, that the work required him.

f. That a monthly minimum wage of $225.00 was guaranteed, providing he worked whenever required by the company.

The record shows further that later, at the request of the deceased, the monthly wage was changed from $225.00 minimum to a flat rate of $275.00; provided, however, that all of the other terms of the contract remained in force and effect, to wit: that the deceased participate in any kind of work within his capacity, and that he agreed to

work whenever required by the company, Sundays and holidays not excepted, and be subject to call at any time required by the company, overtime being eliminated in lieu of the flat salary of $275.00 per month.

The deceased was also furnished a home owned by the West Indian Company, in the small town of Saint Thomas (12,000), which house overlooked the dock, in order that he might see the boats come in, which it became his duty to service at any hour, day or night.

The testimony further shows that the deceased was what was called one of the "key" employees of the West Indian Company which company, among other things, gave refuelling service at all hours, day or night, to boats entering the port, and that the deceased was in charge of the crane and other apparatus operated for that purpose. That it was his duty to supervise the refuelling of all boats coming to the West Indian Company's dock requiring such refuelling and to see to it that the laborers and men who worked under him were rounded up in town and made available whenever that work became necessary day or night and Sundays and holidays not excepted.

The record further shows that on Saturday, the third day of February, 1945, the deceased was informed by witness Mylner, another "key" employee of the West Indian Company, that Barge K-15 would be in St. Thomas and would be at the dock for refuelling some time Sunday evening, February 4, 1945, at which time the deceased told witness Mylner that he would be ready to refuel the said barge and that it would be necessary for him, before doing so, to round up and bring to the dock in his car, the men who worked under him in the town of St. Thomas, and have them ready for work, as on Sunday his men would be out having fun.

The record further shows that between the hours of twelve and one o'clock on Sunday, February 4, 1945, the

deceased saw witness Jessen at the beach at which time he was again reminded that the barge would be in some time Sunday evening requiring the service of the deceased. Deceased left the beach later in the afternoon and while passing a friend's house about six o'clock refused to go to the friend's house as deceased stated that he was expecting the barge for service and it would be necessary for him to go to his own home where he could see when the barge came in to the dock for service. Deceased thereupon went to his home, and at seven o'clock he called the watchman at the West Indian Company dock and told him to watch out for Barge K-15 and to call the deceased at his home telephone, No. 521, and had the watchman write the number down so as not to forget it, and to notify him as soon as the barge came to the dock (see testimony of watchman Williams).

Another witness also testified that watchman Williams told him that the deceased had called him and told him to look out for the barge and that he saw Williams write the telephone number down to call the deceased when the barge arrived.

The claimant herein testified that someone called the deceased from the dock about 8:00 o'clock, and told him to be at work at 10:00 o'clock; that the deceased talked to the person over the telephone and then said that he would rest a while before going to work. The watchman denies making this call. However, at 9:45 p.m., the deceased put on his working clothes and told the claimant that he was then going to round up his workmen in town and get the laborers who were needed to work with him in servicing the barge; that he would be home about 4:00 a.m., the next morning. The deceased then went out to the garage to get his car. His garage was also company property furnished to him. That was the last seen of the deceased alive.

At 7:00 o'clock the next morning, Monday, February 5, 1945, the deceased was found dead in his garage back of the home where he kept his car, lying at the back of the car with one trouser leg torn. The autopsy showed that the deceased had died of monoxide poisoning from the exhaust of the automobile; that the motor was still warm and had been running; that all of the gas in the car had burned out, and that the deceased's face was burnt from the exhaust; that his body was lying on the ground back of the automobile. The evidence further shows that the Barge K-15 did not in fact arrive at the West Indian Company's dock until 6:00 or 7:00 a.m., February 5, 1945. The captain of the barge decided not to come for refuelling on Sunday evening; notified his agent who also notified witness Rimple, an employee of the West Indian Company, but according to the record herein this information was not conveyed to the deceased.

There were three points raised in the argument of the appeal before this court:

1. That perhaps the death herein was due to suicide.

2. That if it was an accident, it did not occur in the course of his employment; and

3. That if it was an accident which occurred in the course of his employment, it did not arise out of his employment.

As to the first argument raised by counsel for the Commission that "perhaps the death was due to suicide," the Commission made no finding to that effect. This court thinks rightly so, as the argument is totally without any evidence to support it, and is contrary to the physical evidence in the case and is, therefore, purely speculative.

The evidence in the record in this case shows that the deceased was in good spirits; had no financial troubles; had no family troubles; had no reason, as shown in the record, to justify suicide; but in addition to that, shows

that the deceased, in his every act on the day of his death, showed that he was expecting this barge, and expecting to service it. He enjoyed a swim at the beach with his wife; he came home and rested for the purpose of going to work that night. The testimony of Dr. Knud-Hansen shows that the most reasonable inference was that he tore his trousers on the fender of the car as he fell behind it; so that this court is of the opinion that the only reasonable inference from all of the physical facts is that it was an accident caused by monoxide poisoning from the motor of his automobile.

For this court to make a finding of suicide merely upon the speculative argument of counsel that it "might have been suicide" would be contrary to all reasonable inferences in the record, and would be contrary to the vast majority of the cases where workmen are killed in accidental deaths, and where the witness himself is not present to testify as to his intention. They would all have to be classified as suicide; such as a pilot in an airplane crash; a truck falling over a hillside; a man falling off of a scaffold and others too numerous to mention. In almost all of the cases in which death results, it could be speculated that perhaps the man intended to die. So this court feels that the Commission was correct in not finding that this death was a matter of suicide, which defense, if raised by the respondent, must be proved by him, but which in this case is contrary to all of the evidence and the physical facts. There being no evidence whatever of suicide. See Sawyer's Case, 315 Mass. (1943), 52 N.W.2d 949.

■ Counsel for the Commission further argues that the accident did not occur in the course of the employment. While actually twenty-four hours service is rare, it seems that the weight of authority is to the effect that any employee whose contract does call for such service

is in the course of the employment continuously. Hence, a nurse on twenty-four hour service is protected while cycling to quiet her nerves with her employer's permission. Clapham v. David, 232 A.D. 458 (1931). It is reasonable to rule that the worker who is subject to call twenty-four hours a day is in the course of the employment at all times. To make an award only when he is actively working gives him no greater right than the ordinary set hour worker whose remainder of the day is his own. Nearly all States, therefore, recognize the principle of twenty-four hour protection of the man subject to call; and it seems a reasonable rule that injury to such worker at all times is in the course of his employment. See Souza's Case, 316 Mass. 332 (1944), 55 N.E.2d 611 — travelling worker burned to death while sleeping in public lodging house selected by himself, and charged as expense to the employer may recover. Moore v. Manchester Liners (H.L. 1910) 3 B.W.C.C. 527 — "A man engaged for so many hours a day is in the employment only during those hours; but if engaged for a month continuously day and night, he is in the employment during the whole month." Davis v. Bjorenson, 229 Iowa 7 (1940) — "auto became instrumentality of the business — had to drive to work, so the collision on way to work compensable." Aetna Casualty Co. v. Industrial Commission, 110 Colo. 422 (1943); the deceased was sent on a long trip to Detroit to get two trucks, and also expected to visit family thereafter. The court held: "If the work of the employee creates the necessity for travel, he is in the course of the employment, though he is serving at the same time some purpose of his own." Donovan v. Worsted Mills, Inc., 90 N.H. 450 (1940). The court held that the act of the employee includes errands for employer, though using his own son's automobile. The service was a causative factor of the accident. Sullivan's Case, 265 Mass. 463 (1929) — hotel kitchen

dishwasher fell over broom on way to her room. Held: The evidence showed continuity of employment, and was sufficient. Olson Drilling Co. v. Industrial Commission, 54 N.E.2d 452 (Ill. 1944) — the deceased was en route to the office with reports. It was held, that if the work of the employee creates the necessity for travel, he is in the course of his employment.

The narrow rule that the worker is not in the course of his employment, until he crosses the employment threshhold is itself subject to many exceptions, one of which is that if the employee is subject to call at all hours or at the moment of injury he is in the course of his employment. See Sullivan's Case, 265 Mass. 463 (1929); also Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S. Ct. 221, 72 L. Ed. 507. In the latter case the Supreme Court of the United States declared that it will not overturn any State decision that so enlarges the scope of its Act. See also Donovan's Case, 217 Mass. 76 (1914), 104 N.E. 431, Ann. Cas. 1915C 778, L.R.A. 1916A 235, 266, 331, 10 A.L.R. 169; the Gilbert's Case, 253 Mass. 538 (1925); also Chapman v. Cyr Co., Inc., 135 Me. 416 (1938); also Hunter v. Summerville, 205 Ark. 463 (1943); also Radermacher v. St. Paul City Ry. Co., 8 N.W.2d 466 (Minn. 1943); also Ward v. Cardillo, 77 App. D.C. 343 (1943); also City of San Francisco v. Industrial Accident Commission, 142 P.2d 760 (1943). This latter case held: A free pass plus the regular practice of transportation made it an incident of employment "whether it be in a private or public conveyance." Many other cases are cited therein, but it seems clear to the Court that it is a reasonable rule that where the worker is subject to twenty-four hour a day duty, and is subject to call at any time during the day, as was the case herein, that he is in the course of his employment during the entire twenty-four hours.

██ It does not seem logical that the accident may

arise "out of" the employment and not be "in the course of" the employment. It is, however, possible that the accident might be "in the course of" the employment and yet not arise "out of" the employment so we come to the third argument of counsel for the Commission, that the instant accident did not arise out of the employment.

It is argued herein that the evidence does not prove that the deceased was on his way to work at the dock; that the evidence leaves a question as to whether he was called at eight o'clock as was testified to by the complainant. However, even assuming that no call came for him to go to work at eight o'clock, this court is of the opinion that the rest of the testimony in the record is sufficient to show by the preponderance thereof, that the death of the deceased was an incident of his employment. As mentioned above, witness Mylner testified that he informed the deceased the day before the accident that Barge K-15 would be at the dock on Sunday afternoon, and deceased expressed his intention, which was his duty, of rounding up with his automobile, the workmen necessary to service the barge and bring them to the dock, that the deceased was reminded again on Sunday between the hours of twelve and one o'clock that the barge would be in that Sunday evening; that he went home at six o'clock to be present and ready to service the said barge when called; that he refused to stop at a friend's house, but went directly home for that purpose; that at seven o'clock he called watchman Williams and left his telephone number and instructed the watchman to be sure and call him if the watchman should see the barge come up; and that at 9:45 p.m., he left his home, having changed to his working clothes, and went out stating as he left that he was going to get the workmen in his car to bring them to work, all of which was part of his duty.

In the face of this evidence, uncontradicted and unim-

66

peached, this court cannot see how a finding could be made that the deceased was not both in the course of his employment and that the accident arose out of that employment. The burden is always upon the party raising the defense and, therefore, is upon the insurer or employer. The defense has produced no contradictory evidence whatever to support its argument. See Johnson v. Johnson Lumber Co., 200 So. 48 (La. App. 1941); Hopwood v. Pittsburgh, 152 Pr. Super. 398 (1943); Reddick v. Grand Union Tea Company, 296 N.W. 800 (Iowa 1941); Smith v. Wright Co., 232 A.D. 343 (1931); Martin v. City of Biddeford, 20 A.2d 715 (Maine 1941); City Ice and Fuel Co. v. Karlinsky, 33 Ohio App. 42 (1929); Connor Co. v. Industrial Commission, 374 Ill. 105 (1940). The line of decisions hold that if the work is incidental or causative the accident arises out of the employment. As outlined in the case of Cudahy Packing Co., v. Parramore, 263 U.S. 418, 44 S. Ct. 153, 68 L. Ed. 366, Mr. Justice Sutherland said: "It is enough if there be a causal connection between the injury and the business . . . a connection substantially contributory, though it need not be the sole proximate cause . . . No exact formula can be laid down which will automatically solve every case." In the case of Lawrence v. George Matthews (1929); 1 K.B. 1. and the Globe Indemnity Co. v. MacKendree, 146 S.E. 46 (Ga. Ct. of App. 1928) — tree fell on auto because of winds in woodland. The court held that the storm and the tree combined was along the route deceased travelled, that his employment subjected him to such danger.

The principle, therefore, is that the accident need not necessarily arise out of the nature of the employment, but that the injury arises out of the employment if it arises out of either the nature, conditions, obligations, or incidents of the employment. Thus in the case of Hughes v. St. Patrick's Cathedral, 245 N.Y. 201

(1927) the court held that the section boss in the cemetery who was overcome by heat prostration was entitled to an award because of the peculiar or increased exposure. And in the Shute's Case, 290 Mass. 393 (1935), the court disavowed these narrow English cases of injuries by elements by stating: "So far as the decision in Warner v. Couchman it at variance with what is here decided, we are not disposed to follow it." See also Souza's Case, 316 Mass. 332 (1944), 55 N.E.2d 611, where Justice Cardozo refused to follow the early English cases inconsistent "with the broader conception of employment" in Leonbruno v. Champlain Silk Mills, 229 N.Y. 470 (1920). In the Aetna Life Insurance Co. v. Industrial Commission, 81 Colo. 233 (1927), the court held: "A majority of this court thinks that, since Oakley's employment required him to be in a position where lightning struck him, there was causal relation between the employment and the accident." See also the excellent discussion of this principle by McCaleb, J., in Harvey v. Caddo D.S. Cotton Oil Co., 6 So.2d 747, 750 (La. 1942) cyclone injury. See also the following cases holding that accidents arose out of the employment.

California: Cal. Casualty Indemnity Exch. v. Industrial Accident Commission,. 53 P.2d 758 (1936) — salesman asphyxiated by gas heater in automobile camp.

Connecticut: Harivel v. Hall-Thompson Co., 98 Conn. 753 (1923) — traveling salesman injured escaping from fire in hotel.

Georgia: Railway Express Agency v. Shuttleworth, 61 Ga. App. 644 (1940) — investigator died during night hotel fire.

Kentucky: Standard Oil Co. v. Witt, 283 Ky. 327 (1940) — construction foreman died in hotel fire.

Indiana: Lasear, Inc. v. Anderson, 192 N.E. 763 (1934) — long distance truck driver asphyxiated in overnight cabin.

Massachusetts: Souza's Case, 316 Mass. 332 (1944), 55 N.E.2d 611 — excellent discussion and citations by Qua, J. There is no need to show any increased risk of fire, and injuries other than by fire are compensable also.

Michigan: Thiede v. Searle & Co., 270 N.W. 234 (1936) — traveling salesman killed in hotel fire.

Minnesota: Stansberry v. Monitor Stove Co., 150 Minn. 1 (1921) — traveling salesman killed trying to escape hotel fire.

Tennessee: Employers Liability Assur. Corp. v. Warren, 172 Tenn. 403 (1938) — inspector for fire insurance company fell from hotel porch.

Texas: Texas Employers' Insurance Assn. v. Cobb, 118 S.F.2d 375 (1938) — collector asphyxiated in tourist cabin.

Cf. Lepow v. Lepow Knitting Mills, Inc., 288 N.Y. 377 (1942) — traveling salesman in South Africa protected against deadly mosquito bites both day and night.

Thus, this court is of the opinion that the reasonable inference, from all of the evidence herein, is that the deceased was in the act of getting his car out of the garage for the purpose of going for the men necessary to refuel Barge K-15 and that while in the act of getting his car out, a duty required in his employment, that he was killed by accident of asphyxiation, and that his death arose both in the course of his employment and out of the employment.

In view of all of the foregoing, it is, therefore, the opinion of this court that the Workmen's Compensation Commission of Saint Thomas and Saint John erred in its findings, Nos. 2, 3, and 5.

It is further the opinion of this court that the findings of the Commission in Nos. 1 and 4 have no probative significance and do not affect the claimant's right to recover inasmuch as it makes no difference whether he was called to go to work at eight o'clock or whether he was not called

at eight o'clock, in view of his preparedness all day to service this barge.

Further, that finding No. 4 has no significance in claimant's right to recover as it makes no difference whether the barge actually came at the time expected, or at a later date, or whether it ever came or not, inasmuch as the evidence shows that the deceased had been informed that it would be there, and was prepared and expected to service the said barge. It might be well to call attention to the fact that nowhere in the evidence is there any witness who informed the deceased that the captain of the barge had changed his plans and the record shows that the deceased was still expecting and preparing to service the barge on Sunday evening which it was his duty to do.

It is therefore the opinion of this court that the Commission erred in finding that the claimant is not entitled to recover; and

It is further the opinion of this court that the claimant is entitled to recover compensation for the death of the deceased in accordance with the provisions of the Workmen's Compensation Act for Saint Thomas and Saint John▮.

The decision of the Commission is therefore reversed and order and decree may therefore be drawn in accordance with this opinion.