## JESSE T. MCELROY, JR.'S CASE.

Suffolk. April 9, 1986. — June 12, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Workmen's Compensation Act,* Findings by Industrial Accident Board, Street risk, Injuries to which act applies.

A single member of the Industrial Accident Board made adequate subsidiary findings to support his ultimate finding that an employee had been en route to a physician's office for the purpose of obtaining medical treatment for a work-related injury when he was injured in an automobile accident. [745-746]

An employee was entitled to receive workers' compensation benefits for injuries sustained in an automobile accident occurring while the employee was en route to a doctor's office for treatment of a work-related injury. [746-750]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

The case was heard by *William H. Carey,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard J. Ferriter* for the employee.

*Edward J. Mahan* for the employer.

HENNESSEY, C.J. The question of first impression presented by this workers' compensation appeal is whether an employee may be awarded compensation for injuries suffered in an automobile accident occurring while the employee was en route to a doctor's office for treatment of a work-related injury.

The following facts are undisputed. The employee worked for the General Motors Corporation (self-insurer) in its plant in Framingham. On April 28, 1978, the employee suffered a back injury while working on the assembly line. He was out of work from the date of his injury until January 16, 1979, and received weekly benefits for that period. On his return to

work, the employee was assigned to a light duty job. However, he was transferred back to his regular assembly line job when another employee with more seniority returned from pregnancy leave. Soon after this transfer, the employee began complaining of a recurrence of back pain. Dr. Charles Bonzey, the General Motors Corporation plant physician, determined that the employee's pain was caused by his return to heavier work. The employee ceased work on February 15, 1980. The self-insurer concedes that from February 15, 1980, to March 21, 1980, the employee was temporarily totally disabled as a result of a work-related back injury.

The employee was checked periodically by Dr. Bonzey at the plant clinic, and also began treatment with a private physician, Dr. Hurwitz. Dr. Hurwitz maintained offices in Marlborough. On the afternoon of March 21, 1980, the employee was driving his own motor vehicle to Marlborough to keep an appointment with Dr. Hurwitz. While en route to the doctor's office, the employee was involved in a motor vehicle accident. He sustained catastrophic medical injuries, including but not limited to a 100% loss of function of his right arm. Since March 21, 1980, the employee's medical problems have related solely to the injury arising out of the automobile accident, and there is no indication in the record that he has undergone any further treatment for his back condition.

The employee brought a claim for workers' compensation benefits before the Industrial Accident Board (board). After a hearing, a single member of the board found that the employee had been traveling to Marlborough at the time of the accident for the purpose of obtaining medical treatment for a work-related injury, and ruled as a matter of law that injuries sustained in such an accident are compensable under G. L. c. 152, § 26 (1984 ed.). The self-insurer was ordered to pay related benefits and medical expenses. The self-insurer filed a claim for review. The reviewing board adopted the findings and decision of the single member.

The self-insurer sought review of this decision in the Superior Court. The self-insurer did not contest the award of compensation from February 15, 1980, to March 21, 1980, conceding

that the employee suffered from a work-related back injury which left him temporarily totally disabled during that period. The self-insurer only contested the award of compensation after the date of the automobile accident. The Superior Court judge reversed the decision of the board, ruling that (1) the single member's finding that the employee was en route to obtain medical treatment for a work-related injury at the time of his accident was not based on adequate subsidiary findings, and (2) even if the single member properly could have found that the employee was en route to obtain medical treatment at the time of his accident, injuries sustained during such a trip are not compensable as a matter of law under G. L. c. 152, § 26. The employee appealed. We granted the self-insurer's application for direct appellate review, and now reverse.

*1. Medical Treatment*

The reviewing board affirmed and adopted the decision of the single member; thus, we look to this decision to determine whether the action of the board was correct. *Haley's Case*, 356 Mass. 678, 679-680 (1970). *Ballard's Case*, 13 Mass. App. Ct. 1068 (1982). "It is the exclusive function of the board to consider and weigh the evidence and to ascertain and settle the facts." *McEwen's Case*, 369 Mass. 851, 853 (1976), quoting *Chapman's Case*, 321 Mass. 705, 707 (1947). A reviewing court may not reexamine the evidence to determine whether it is substantial or credible. *McEwen's Case, supra* at 854. The decision of the board must be upheld unless it is wholly lacking in evidentiary support, or a different conclusion is required as a matter of law. *Corraro's Case*, 380 Mass. 357, 359 (1980). *Anderson's Case*, 373 Mass. 813, 816 (1977).

The single member found as a fact that the automobile accident "occurred while the employee was seeking medical treatment" for his back injury. This finding is supported by the evidence. The employee testified that he began undergoing treatments with Dr. Hurwitz after his back injury. The employee further testified that he was traveling to Dr. Hurwitz's office in Marlborough at the time of the accident to discuss with Dr. Hurwitz an electromyogram which had been scheduled by the plant physician for the following week. During this.

regularly scheduled appointment, the employee also planned to pick up an authorization card for his weekly physical therapy sessions. According to the employee's testimony, Dr. Hurwitz would "look[] at my back, ask[] me to do certain movements, . . . then he made out a card for me to go to the hospital for therapy." This testimony supports the single member's finding that the employee was traveling to Marlborough on March 21, 1980, for the purpose of obtaining medical treatment, including examination by and consultation with his private physician.

The Superior Court judge ruled that the single member's finding regarding medical treatment was not supported by adequate subsidiary findings. While we have previously indicated that the board should make such specific and detailed subsidiary findings as will enable the reviewing court to determine with reasonable certainty whether correct rules of law have been applied (see *Messersmith's Case*, 340 Mass. 117, 120 [1959]; *Chapman's Case*, 321 Mass. 705, 711 [1947]), this principle is intended to safeguard the function of the reviewing court, and not to regulate the precise form of the board's decision.

In this case, the single member made adequate subsidiary findings which explained and supported his ultimate finding regarding medical treatment. The single member found that the employee "experience[d] a recurrence of back pain," as a result of which he ceased work on February 15, 1980, and "began treating with a private physician, Dr. Hurwitz." The single member also found that "on the afternoon of March 21, 1980, the employee was driving his own motor vehicle to Marlborough, Massachusetts, to keep an appointment with Doctor Hurwitz, his attending physician." This statement of subsidiary findings was adequate to reveal the basis for the single member's ultimate finding, and to enable the reviewing court to determine whether correct principles of law had been applied. See *Tripp's Case*, '355 Mass. 515, 518 n.1 (1969); *DiClavio's Case*, 293 Mass. 259, 261-262 (1936).

2. *Compensability*

This court has never addressed the question whether an employee's injuries sustained in a motor vehicle accident while

traveling to a doctor's office for treatment of a work-related injury are compensable under G. L. c. 152, § 26.[1] A majority of jurisdictions which have addressed this issue have held that these second injuries are compensable. E.g., *Laines* v. *Workmen's Compensation Appeals Bd.*, 48 Cal. App. 3d 872, 877 (1975); *Taylor* v. *Centex Constr. Co.*, 191 Kan. 130, 135 (1963); *Moreau* v. *Zayre Corp.*, 408 A.2d 1289, 1293 (Me. 1979); *Charles N. Clark Assocs.* v. *Dependents of Robinson*, 357 So. 2d 924, 929 (Miss. 1978); *Camp* v. *Lockheed Elecs., Inc.*, 178 N.J. Super. 535, 544 (1981); *Immer & Co.* v. *Brosnahan*, 207 Va. 720, 722-723 (1967). See generally 1 A. Larson, Workmen's Compensation § 13.13 (1985). Contra *Snowbarger* v. *M.F.A. Cent. Co-op.*, 349 S.W.2d 224, 226 (Mo. 1961) (denying compensation where employee not directed to visit second doctor). Where a compensable, work-related injury is the cause of the employee's journey to the doctor's office, injuries sustained en route generally are considered to have arisen in the course of employment.[2] See 1 A. Larson, *supra*. Because an employer has a duty to provide, and an employee has a duty to accept, medical treatment for work-related injuries, an employee who is traveling to or from a place of medical treatment is fulfilling an

---

[1] In *Maguire's Case*, 16 Mass. App. Ct. 337 (1983), the Appeals Court affirmed the denial of benefits to an employee who was injured in an automobile accident while driving from her place of employment to retrieve medicine (prescribed for a work-related injury) which she had forgotten at home. The Appeals Court held that the employee was engaged in an independent enterprise and that the journey did not arise out of the obligations or incidents of her employment. *Id.* at 341. The Appeals Court did not address the question whether injuries sustained while traveling to obtain medical *treatment* are compensable under G. L. c. 152, § 26, but cited with approval cases from other jurisdictions allowing compensation in such circumstances. *Id.* at 340.

[2] In reaching this result, other courts have relied on analogous decisions allowing compensation for injuries sustained while traveling by ambulance from the site of a work-related injury, see, e.g., *Bettasso* v. *Snow-Hill Coal Corp.*, 135 Ind. App. 396 (1963) (ambulance involved in collision), and for injuries sustained during the course of medical treatment, see, e.g., *Burns's Case*, 218 Mass. 8 (1914) (blood poisoning incurred during hospital stay); *Owens* v. *Neeb Kearney & Co.*, 181 So. 2d 301 (La. Ct. App. 1965) (negligence in performance of operation).

implied obligation of the employment contract. See *Laines, supra; Moreau, supra.*

Those jurisdictions which allow benefits in these circumstances have done so on the basis of the "arising out of and in the course of his employment" language found in their respective workers' compensation statutes. However, the Massachusetts workers' compensation statute makes separate provision for "street risks," such as automobile accidents, which are common to all persons traveling on public highways and not incident to any particular employment relationship.[3] G. L. c. 152, § 26. See *Hamel's Case*, 333 Mass. 628, 629 (1956) (injury to employee arising from automobile accident properly compensable under street risks provision, even though improperly analyzed by board as injury "arising out of and in the course of his employment"); *Harvey's Case*, 295 Mass. 300, 304 (1936) (same). The statute provides for the payment of compensation to an employee for a personal injury "arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer." G. L. c. 152, § 26. While we have stated that this provision is "closely related" to the "arising out of and in the course of his employment" language which directly precedes it in the statute, *Simmons's Case*, 341 Mass. 319, 321-322 (1960), and while the controlling principles under each clause tend to converge, see *D'Angeli's Case*, 369 Mass. 812, 816 (1976) (requiring only that activity be incidental to and not inconsistent with employment), we must analyze the

[3] Prior to 1927, when the street risks provision became effective, injuries to an employee while using the streets were generally not compensable, under the view that these injuries arose from risks common to every citizen. See *Colarullo's Case*, 258 Mass. 521, 522 (1927). Cf. *Kearney's Case*, 232 Mass. 532, 534 (1919) (exception to this rule where street is, in effect, the place of employment). Many States abandoned their street risks rule by judicial decision, and began to compensate an employee's street injuries which could be considered to arise "out of and in the course of his employment." E.g., *Katz* v. *A. Kadans & Co.*, 232 N.Y. 420, 423 (1922). See generally 1 A. Larson, Workmen's Compensation §§ 9.20, 9.40 (1985). However, in Massachusetts the street risks rule was abolished by the Legislature, St. 1927, c. 309, § 3, and thus separate provision was made in G. L. c. 152, § 26, for compensation of personal injuries arising from ordinary risks of the street. See *Simmons's Case*, 341 Mass. 319, 321 (1960).

employee's injuries in this case under the separate "street risks" provision of G. L. c. 152, § 26, to determine whether they are compensable.

We do not hesitate to conclude that the employee was "actually engaged . . . in the business affairs or undertakings of his employer" at the time of the accident. G. L. c. 152, § 26. An employee's journey to a doctor's office for treatment of a work-related injury has its genesis in, and is necessitated by, the employment relationship. See *Caron's Case*, 351 Mass. 406, 409-410 (1966) (death resulting from car crash compensable where driver returning home from company dinner party). "[W]here it appears that it was the employment which impelled the employee to make the trip, the risk of the trip is a hazard of the employment." *Id.* at 409. *Papanastassiou's Case*, 362 Mass. 91, 93 (1972) (chemist returning to laboratory to check test results engaged in business affairs or undertakings of his employer). The employee was not engaged in an independent enterprise or personal errand at the time of the accident. Compare *Jarek's Case*, 326 Mass. 182, 183-184 (1950) (denying compensation where employee left place of employment to tell his wife that he would be working late). The trip was necessitated by a work-related injury, and the treatment to be obtained benefited both the employer and the employee. *Id.* at 184 (necessary inquiry is whether employer had any interest in trip and derived any advantage from it).

A more difficult question, however, is whether the employee made the trip to Dr. Hurwitz's office "with his employer's authorization" within the meaning of G. L. c. 152, § 26. The single member found, and both parties agree, that the employee was not directed or instructed by anyone in authority at General Motors Corporation to see Dr. Hurwitz on March 21, 1980, or on any other occasion. The employee's trip thus was not *expressly* authorized by the self-insurer. Nonetheless, the self-insurer's authorization can be inferred both from its conduct and from its statutory duty to pay for the employee's medical treatment.

First, the medical records of the plant clinic indicate that the self-insurer knew that the employee was being treated by

Dr. Hurwitz. Two "clinic slips" (records of the employee's visits to the plant clinic) bear the notation "under care of Dr. Hurwitz, Marlboro." The self-insurer's knowledge that the employee was undergoing private treatment for his back injury, and its failure to direct the employee either to forgo such treatment, or to see a different doctor, indicate that the employee was impliedly authorized to undergo treatment with the physician of his choice.

In addition, the employee's authority to visit Dr. Hurwitz may be implied as a matter of law. Under the worker's compensation statute, an employer is obligated to pay the reasonable and necessary medical expenses resulting from an employee's work-related injury. G. L. c. 152, §§ 30, 45 (1984 ed.). See *Levenson's Case*, 346 Mass. 508, 510-513 (1963). The employee has a corresponding duty to submit to medical treatment, in order to avoid exacerbating his injury or prolonging his absence from work. See *Akins's Case*, 302 Mass. 562, 565 (1939); *Pena's Case*, 5 Mass. App. Ct. 451, 455 (1977). The employee may "be treated by a physician of his own selection," and the reasonable cost of such services "shall be paid by the insurer, subject to the approval of the division [of industrial accidents]." G. L. c. 152, § 30. The employee's "authority" to visit Dr. Hurwitz thus arises from the rights and duties of the parties under G. L. c. 152, § § 30, 45.

In summary, we hold that injuries sustained by an employee in an automobile accident while traveling to obtain medical treatment for a compensable, work-related injury are also compensable under G. L. c. 152, § 26. The judgment of the Superior Court is reversed, and the case is remanded for the entry of judgment affirming the order of the Industrial Accident Board.

*So ordered.*