Donohue, J.
INTRODUCTION
In May 1995, the Plaintiff, Carol Perkins (Perkins) filed a complaint against the Defendants. An Amended Complaint was filed on October 23, 1996 without opposition. In the Amended Complaint, Perkins alleges that certain Defendants violated her civil rights, wrongfully terminated her from the State Police Academy in violation of public policy, and committed acts or omissions amounting to negligence.
On March 3, 1998, the Defendants, Commonwealth of Massachusetts Executive Office of Public Safely (Office of Public Safety), Massachusetts Criminal Justice Training Council (Training Council), and the Department of State Police (State Police), filed a Motion for Summary Judgment. Through this motion, these three Defendants seek judgment on so much of the Amended Complaint as it sets forth allegations against them. Specifically, Count II sets forth a claim of wrongful termination in violation of public policy. Perkins alleges that, due to the actions of the three Defendants, Perkins was constructively discharged from the State Police Academy. Also in the Amended Complaint, Count VI alleges that the three Defendants negligently failed to provide Perkins with the proper medical care, and negligently failed to supervise “the Academy and its personnel in reference to the medical needs of Perkins.”
Perkins opposed the motion. A hearing was held on June 12, 1998, at which time all parties presented arguments. For the following reasons, the Defendants’ Motion for Summary Judgment is allowed.
BACKGROUND
The following facts are derived from the summary judgment record. Perkins was accepted to the Massachusetts State Police 70th Training Academy in November 1991. Perkins’s training began on June 15, 1992. Perkins suffered a groin strain during the second week of training. This condition was treated and healed without incident. On or about June 29, 1992, Perkins began to feel congested and experienced dizziness, and difficulty breathing. Perkins did not report her illness to any official or instructor on that day, nor on June 30, 1992. Instead, Perkins conducted her daily activities without complaint. On these two days, Perkins did not respond when the morning call was made for ill or injured trainees.
On July 1, 1992, during the morning run, Perkins informed Defendant Trooper Johanna Lawlor (Trooper Lawlor) that she was having difficulty breathing and could not continue to run. Trooper Lawlor suggested that Perkins attempt to run again, and that she try to control her breathing. Perkins attempted the run, but was unable to breathe. Trooper Lawlor ordered Perkins to see Trooper Charles Gilmore, the paramedic at the Academy, for medical assistance. Perkins reported immediately to Trooper Gilmore.
Upon meeting with Trooper Gilmore, Perkins informed him that she felt congested, was sweating, had difficulty breathing, and was suffering from dizziness. Trooper Gilmore gave Perkins two Sudafed and a throat lozenge. Perkins returned to her training.
On July 2, 1992, Perkins responded to the morning call for sick or injured trainees, and reported to Surgeon General Doctor Murphy for examination. Upon examination, Dr. Murphy determined that Perkins was suffering from an allergic reaction and ordered that she be placed on light duty until the following Tuesday, July 7, 1992. An order that a trainee be placed on light duty prohibits that trainee from participating in any physical activity, including double-timing and other physical exertions. When a light duty order issues, Trooper Gilmore informs Commandant Trapasso, the Director of Recruit Training, and the Senior Drill Instructor of the cadet’s status. From there, verbal notification was given to the instructors and other supervisors, as deemed necessaiy. The cadets are expected, at a minimum, to comply with a light duty order.
Perkins did not participate in the morning physical activities. However, Perkins participated in physical activities that afternoon, including the command and leadership class and self-defense tactics. On Friday, July 3, 1992, Perkins visited her family physician, Dr. Hart. Dr. Hart diagnosed Perkins as suffering from bronchitis, and possibly pneumonia. Dr. Hart did not take x-rays of Perkins’s chest, nor did he indicate that she may be suffering from pneumonia in his medical notes. Dr. Hart prescribed antibiotics and rest.
The prescription for rest prompted Perkins to call the Academy on Monday, July 6, 1992 with the instructions for rest. Perkins was ordered by Trooper Domnarski to pack her gear and come to the Academy. *620 Upon her arrival, Perkins met with Commandant Trapasso to discuss her health. Commandant Trapasso attempted to accommodate Perkins by suggesting that she be excused from participating in all physical activities and only attend classes. After discussing that option with Dr. Hart and Dr. Murphy, Perkins was ordered to not participate in physical activities, and to rest between classes. Perkins completed a written examination, which she did not find taxing to her health.
After the examination, Perkins went to the dining hall. In the hall, Perkins did not properly square her comers as required by Academy mies, for which she was reprimanded by Trooper Leslie Bodor. It is disputed whether Bodor called Perkins a “phony” and whether Perkins informed Bodor of her illness. A verbal argument ensued, during which Perkins attempted to leave the dining hall. She was ordered by other instructors to remain in the hall, but refused to comply with these orders. Perkins then verbalized her desire to leave the Academy. Perkins then met with Commandant Trapasso. At that time, Trapasso gave Perkins a demerit for her conduct in the dining hall. Trapasso agreed to allow Perkins to go home for the evening and return the following morning.
On Tuesday, July 7, 1992, Perkins returned to the Academy. She arrived after the morning physical activities, as instructed, and attended classes. Despite the order issued the prior day that she was not to participate in any physical activities, Perkins attended and participated in the command and leadership class. This class involves marching. Perkins was removed from the class by Troopers Lawlor and Ex-arhopoulos; she was then taken to Mary Lane Hospital. At the hospital, Perkins was given a chest x-ray and examined. The results of the x-ray are in dispute (the Defendants claim that the x-ray revealed that Perkins did not have pneumonia, while Perkins alleges that she had walking pneumonia). Perkins’s prescription for antibiotics was changed at that time, and she was instructed by the physician to consume three glasses of water per hour.
Upon her return to the Academy that afternoon, Perkins participated in physical activities during the defense tactics class. Perkins so participated, despite her prior order from Commandant Trapasso that she not participate in physical activities, and not being ordered otherwise. In addition, although she had difficulty participating in the class, Perkins did not inform any instructors of her ailments, nor did she attempt to not participate in the class.
After the defense tactics class, the cadets conducted a room change drill. It is disputed whether Perkins participated actively in the drill, which involved running up and down stairs. The Defendants allege that Perkins was ordered to hold open a stairwell door for the participants, and yell orders to her classmates. Perkins contends that she participated in the drill until she was ordered to cease her involvement due to her illness, and subsequently was ordered to hold open the door. At the door, Perkins yelled until the point where she could no longer yell because of throat pain, and requested that she be permitted to stop yelling. That request was granted.
Despite her minimal participation, Perkins began to feel worse. However, she did not inform any instructor of her condition, or seek a meeting with Commandant Trapasso to request further accommodation. Perkins did not inform Trooper Cambria, the instructor, of her illness. The parties disagree as to whether Trooper Cambria denied Perkins access to water during the drill.
That evening, after eating dinner and participating in academic classes, Perkins attempted again to get water from the hallway. Perkins was confronted by Cambria, who penalized Perkins. After this exchange, Perkins decided to leave the Academy. Plaintiff requested a medical deferment on July 9, 1992 and November 4, 1992, which was denied. Perkins did not seek workers’ compensation benefits for her illness.
These events provide the backdrop for Perkins’s Amended Complaint. In Count II of the Amended Complaint, Perkins alleges that the Defendants wrongfully terminated her in violation of public policy. Specifically, Perkins alleges that she has a right to be free from hazing. Perkins’s position is that the hazing statute applies to the Training Academy because it is a student organization. See G.L.c. 269, §17. Perkins contends that the Defendants provided an unhealthy environment which caused her health, to deteriorate, and these actions amounted to hazing. The result, Perkins argues, is that she was constructively discharged, that is, forced to resign, from the Training Academy.
In Count VI of the Amended Complaint, Perkins alleges that the Defendants negligently denied Perkins from taking her medication, fluids, rest and light duly. In addition, Perkins alleges that the Defendants negligently supervised the Training Academy and its personnel’s actions regarding Perkins’s medical needs.
The Defendants’ opposition to Counts II and VI is twofold. First, the Defendants argue that Perkins’s claims are barred by the Workers’ Compensation Act, because she was an employee seeking damages for injuries which occurred during her employment. Under the Act, an employee must preserve in writing her common law right to sue an employer, or such a right is waived. Because Perkins did not preserve her right, the Defendants argue that the present action is barred by the provisions of the Act.
The Defendants secondly argue that Perkins was not constructively discharged in violation of public policy. The Defendants allege that Perkins resigned from the Academy, and in any event, her discharge from employment-at-will was not in violation of a *621 clearly established public policy exception. Further, because the Training Academy is not a student organization, the hazing statute does not govern the Academy’s actions.
DISCUSSION
I. Summary Judgment Standard
Summary judgment will be granted where there are no genuine issues of material fact and where the record presented entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c) (1997). The moving party bears "the burden of demonstrating that there is no genuine issue of material fact on every relevant issue.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. If the opposing party demonstrates that there are genuine issues of material fact, summary judgment is inappropriate. See id.; Mass.R.Civ.P. 56(c).
II. The Merits of the Defendants’ Motion for Summary Judgment
A. Wrongful Termination (Constructive Discharge); Violation of Public Policy
The Defendants’ primary argument, that Perkins’s claims are barred by the Workers’ Compensation Act, is not without merit. In her claim for damages, Perkins seeks not only lost wages and benefits, but also compensation for “emotional distress,... increased physical distress, attorneys fees and costs ...” which she suffered or incurred as a result of the Defendants’ conduct. The Workers’ Compensation Act, G.L.c. 152, §1, et seq., provides compensation for employees who suffer personal injuries in the course of their employment. The parties do not dispute that Perkins was an employee of the State Police; rather, the parties disagree as to whether the Workers’ Compensation Act applies to the present case. If Perkins is seeking compensation for personal injuries incurred in the course of her employment, her claims are barred by the Workers Compensation Act. Pursuant to the Act, an employee who does not reserve her right, at the inception of employment, to seek common law remedies in the event of an injury waives those rights. See Berge v. H.P. Hood, Inc., 416 Mass. 652, 655 (1993) (underinsurance benefits); G.L.c. 152, §24. However, the employee may seek damages from responsible third parties for injuries in addition to receiving workers’ compensation benefits. See Gaeta v. National Fire and Cas. Ins. Co. of Hartford, 410 Mass. 592, 595 (1991); G.L.c. 152, §15.
The term “personal injuries” is defined within the Workers Compensation Act as ”... includefing] mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment.... No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter.” G.L.c. 152, §1(7A).
Perkins claims that the provisions of the Workers’ Compensation Act are inapplicable to her case. Perkins correctly posits that if the underlying claim is not covered by the Workers’ Compensation Act, then a parasitic claim for emotional distress is likewise not covered. See Green v. Wyman Gordon Co., 422 Mass. 551, 560-61 (1996). Perkins’s Amended Complaint and argument set forth in her opposition to the present motion both indicate that the Defendants failed to provide appropriate medical care, despite their knowledge of her medical conditions. Perkins argues that although her illness was not caused by the Defendants, the Defendants’ “hazed” Perkins, thereby aggravating her illness.
Perkins attempts to avoid the Workers’ Compensation Act by claiming that she did not contract her illnesses because of her employment, but rather, that these illnesses were aggravated as a result of the terms and conditions of her employment. Essentially, Perkins claims that while she did not become sick because of her employment, her physical condition deteriorated due to the Defendants’ conduct while she was employed by the Defendants.
Perkins’s claim falls squarely within the Workers’ Compensation Act. Under the Act, an employee is entitled to benefits if she suffers injury or illness while in the course of her employment. See Doe v. Purity Supreme, Inc., 422 Mass. 563, 565-66 (1996) (intentional torts of co-employees and emotional distress injuries covered by Workers’ Compensation Act); Bengtson’s Case 34 Mass.App.Ct. 239, 239-40, n. 1 (1993) (quoting G.L.c. 152, §26); Gaeta, 410 Mass. at 593 (injured employees may collect workers’ compensation benefits and seek compensation from third-party tortfeasor). In addition, Perkins is entitled to recover workers’ compensation benefits even if a preexisting injury or illness is aggravated in the course of her employment. “If a condition or incident of work aggravates a preexisting health problem, the employee has suffered a "personal injury," and may recover from the employer for his entire disability, without apportionment." Case of Zerofski, 385 Mass. 590, 592-93 *622 (1982) and cases cited. See also Home Indem. Ins. Co. v. Merchants Distributors, Inc., 396 Mass. 103, 104 (1985) (insurer responsible for compensation of employee who sustained subsequent aggravating injury).
Based upon the settled law of the Commonwealth, if Perkins’s illness was aggravated by her employment with the Defendants, she was entitled to recover workers’ compensation for her physical and emotional injuries, as well as her lost wages. It is not significant that Perkins may have become sick for reasons other than her employment; rather, it is only relevant that once she became sick, her employment aggravated her illness and caused her condition to worsen. Perkins’s illness “need not arise out of the nature of the employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects.” Doe v. Purity Supreme, Inc., 422 Mass. at 566, quoting Caswell’s Case, 305 Mass. 500, 502 (1940), and citing Souza's Case, 316 Mass. 332, 334, 55 N.E.2d 611 (1944), The employee’s illness must (1) arise out of and (2) occur in the course of her employment to be covered by the Workers’ Compensation Act. See Case of Larocque, 31 Mass.App.Ct. 657, 658-59 (1991), citing G.L.c. 152 §26. The causal origin of the injury or illness determines whether the former requirement, and the “time, place, and circumstances of the injury in relation to the employment” determine the latter requirement. See id. and cases cited.
Perkins attempts to mask her claims for personal injuries, associated emotional distress, and lost wages through a claim of wrongful discharge. However, Perkins seeks compensation and damages for physical and emotional distress and lost wages incurred as a result of the allegedly wrongful actions of the Defendants. These claims of distress and lost wages arose out of the conduct of her supervisors, specifically, Perkins’s illness was worsened by the Defendants’ actions. Thus, the causal origin of her claims is the Defendants’ conduct while in the course of her employment. Similarly, the Defendants’ actions occurred during the course of her employment. Perkins does not allege that the Defendants acted outside the scope of the employment relationship in causing her harm; rather, it was the employment relationship which aggravated her illness and caused her alleged injuries. That these injuries resulted in Perkins’s decision to leave the Academy, voluntarily or involuntarily, does not change the applicability of the Workers’ Compensation Act. “It appears, well settled that claims for personal injury including emotional distress resulting from employment termination, wrongful or otherwise, are precluded by [the] exclusivity provision [of G.L.c. 152, §24].” Parisi v. Trustees of Hampshire College, 711 F.Sup. 57, 63 (D.Mass. 1989) (emphasis added), citing Foley v. Polaroid Corp., 381 Mass. 545, 548-52 (1980); Tenedios v. Wm. Filenes’s Sons Company, Inc., 20 Mass.App.Ct. 252, 255 (1985); Bertrand v. Quincy Market Cold Storage and Warehouse, 728 F.2d 568, 572 (1st Cir. 1984).
It is worthy of mention that in Count II of the Amended Complaint, Perkins did not claim that the Defendants violated her civil rights. Causes of action alleging civil rights violations are not barred by the exclusivity provisions of the Workers’ Compensation Act. See Foley, 400 Mass. at 84. Because the Workers’ Compensation Act applies to remedy the allegations set forth in Count II of the Amended Complaint, and because Perkins did not reserve her right to pursue common law actions, summary judgment must enter for the Defendants.
B. Negligence
In Count VI of her Amended Complaint, Perkins alleges that the Defendants committed negligence by denying her proper medical treatment and by failing to properly supervise the Training Academy and personnel in the provision of medical care to Perkins. If the Defendants were obligated to provide proper medical care and failed to do so, thus aggravating Perkins’s illness and resulting in a claim for damages, such an action falls within the ambit of the Workers’ Compensation Act. Given the procedures for obtaining medical care at the Academy, the breach of duty which resulted in Perkins’s alleged injuries both arose out of and occurred during the course of her employment.
Perkins argues that the negligent supervision claim is not barred by the Workers’ Compensation Act. As far as is discernible from her arguments against summary judgment, Perkins disputes the applicability of the Workers’ Compensation Act by citing the “dual persona" doctrine. This Commonwealth has yet to adopt the dual persona doctrine, which states that an employee may maintain a cause of action against the employer, distinct from any workers’ compensation coverage, if the employer’s liability arises from his existence as an individual or entity distinct from his employer status. See Barrett v. Rogers 408 Mass. 614, 617 (1990). In dual persona actions, “[t]he relevant inquiry... is not whether a separate theory of liability could be argued against the same legal person, but rather whether the controversy involves a separate legal entity.” Id.
Perkins argues that the Defendants’ status as employer, and their status as medical provider, are separate and distinct. Thus, Perkins argues, the Defendants enjoy a dual persona, which creates separate liability for the Defendants in rendering medical care.
Perkins’s argument is faulty. “[UJnder the dual persona theory, a second function of a single entity results in a second persona only when that function generates obligations unrelated to the entity’s status as employer.” id. at 619, citing Schweiner v. Hartford Accident & Indem. Co., 120 Wis.2d 344, 352-53, 354 N.W.2d 767 (Ct.App.1984). In Massachusetts, an employer is obligated to provide medical care to an em *623 ployee who is injured while at work. See case of McElroy, 397 Mass. 743, 747-48 (1986). Likewise, an employee is obligated to accept medical treatment offered by the employer. See id. In McElroy, the Supreme Judicial Court held that an employee may recover workers’ compensation benefits for injuries sustained in an automobile accident while en route to the hospital after being injured on the job. See id. at 747. The court held that such injuries were sustained in the course of employment, and were thus compensable. See id.
Perkins cannot succeed on her claim for negligence against the Defendants. From the foregoing, it is clear that the Defendants were not acting as a separate entiiy when rendering Perkins medical assistance. The Defendants were obligated to provide Perkins with medical care. Any injuries occurring to Perkins as a result of that medical care are injuries incurred within the scope of her employment, and thus to be covered by the Workers’ Compensation Act. “Where the obligations being sued on relate to the obligations of the defendant as employer, the ‘dual persona’ theory is not applicable.” Wade v. Hutchins, 4 Mass. L. Rptr. 174, 1995 WL 809542, 2 (Mass.Super. 1995).
However, even if this Court were to find that Dr. Murphy was not an employee of the Defendants, but rather was a third-party physician, the Defendants are still entitled to summary judgment. If Dr. Murphy is an independent physician, injuries incurred as a result of his actions or inaction as a physician are better addressed in an action for malpractice. See Turner v. Guiliano, 350 Mass. 675, 678 (1966); G.L.c. 152, §15.
As stated above, Perkins did not reserve her right to sue for common law actions. The causes of actions set forth in the Amended Complaint are of the type which are covered by the Workers’ Compensation Act, and therefore barred by the exclusivity provisions of the Workers’ Compensation Act. See G.L.c. 152, §24.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants, Commonwealth of Massachusetts Executive Office of Public Safely, Massachusetts Criminal Justice Training Council, and the Massachusetts State Police’s Motion for Summary Judgment is ALLOWED. It is further ORDERED that judgment ENTER for the Defendants, Commonwealth of Massachusetts Executive Office of Public Safety, Massachusetts Criminal Justice Training Council, and the Massachusetts State Police on Count II and Count VI of the Plaintiff, Carol Perkins’s Amended Complaint.